## STATE OF IOWA v. PATRICK DUNN, Appellant.

**Murder:** SUFFICIENCY OF INDICTMENT. Where an indictment for murder charges an assault and a willful killing· it is not insufficient, for not charging that the assault was willful; it being the willful killing that constitutes murder in the first degree under the statute.

NOTICE OF TESTIMONY OF WITNESS NOT BEFORE GRAND JURY: *Sufficiency.* Code, section 5373, enacts that the state shall not introduce any witness not examined before the committing magistrate or grand jury, unless it gives the defendant notice in writing, stating the name, occupation and residence of such witness. A notice was served, giving a witness' name as Lee Wood, and his occupation as ·a laborer; and, when called, the witness stated his name as Earnest Lee Wood, commonly called Lee Wood, that he was a laborer, but confined in the county jail when the notice was served. *Held*, that his evidence was properly received; it not appearing defendant had been in any way prejudiced by the failure to give the full name of the witness, or by the fact that he was not then at work.

SUFFICIENCY OF EVIDENCE. The evidence reviewed and *held* sufficient to warrant a conviction of manslaughter.

EVIDENCE. There having been testimony that, after the shooting, some of the parties went back to where they had been when the altercation took place, and emptied the cartridges out of a revolver, it was proper to permit a witness to testify to finding three empty cartridges there; it being a part of the state's case to show that the cartridges found were of the size and kind for bullets, such as that taken from the body of deceased.

*Same.* It was proper to permit a witness to testify that defendant had left a revolver with him for an hour or two on the night before the killing.

*Attempt to break jail.* Tools calculated to facililate escape from jail having been found under defendant's bed, and bars of an outside window having been sawed partially through, it was proper to permit an inmate of the jail to testify to having seen defendant sawing at the bars, and to allow another to testify that he had seen two men at the window, though he could not identify them.

*Identification.* A witness having testified to seeing defendant chasing deceased, and stated that he had seen him in a certain

city, it was proper to permit him to state when he had seen him there; such testimony being competent in support of the identification.

*Conduct of co-defendant.* On a prosecution for murder, it was shown that defendant and his co-defendant had an altercation with deceased, and that deceased went home, but returned shortly to where defendant and his co-defendant were, when, according to an uncontradicted witness, defendant and his co-defendant took deceased's revolver and money, and deceased then ran, and was shot in the back by the co-defendant. Another witness testified that defendant had a revolver in his hand when deceased fell. *Held,* proper to permit a witness to testify as to the conduct of the co-defendant at the time of the altercation.

*Same.* It was proper to admit evidence as to the companionship of defendant and the co-defendant.

*Conviction of coindictee.* It was proper not to permit defendant to show the conviction of his coindictee.

INSTRUCTION CONSTRUED: *As to province of jury to determine sufficiency of evidence.* The court instructed that the jury must find the guilt or innocence of defendant from the evidence alone; that they were the sole judges of the credibility of the witnesses, and the weight of their testimony. Instructions were given on reasonable doubt. The jury were told what they must find to convict, and warned against popular prejudice. In one paragraph of the charge the court stated: "In this case, if you find from the evidence, as you are instructed you must, and under the law as given you herein, that the defendant is guilty of a crime of which he can be convicted under this indictment, you must determine of what degree or included crime he is guilty." *Held,* that though obscure, there was no reversible error, since the jury must have understood that they were the sole judges of the sufficiency of the evidence.

PRINCIPALS. It was proper to instruct that one who is present, and aids, abets, assists, or encourages, is a principal.

*Appeal from Marshall District Court.*—HON. OBED CASWELL, Judge.

WEDNESDAY, APRIL 9, 1902

THE defendant and one John Gray were jointly indicted for the murder of Joseph Williams. The defendant

was separately tried, and convicted of manslaughter. He appeals.—*Affirmed.*

*J. L. Carney* for appellant.

*Chas. W. Mullan,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney General, for the state.

SHERWIN, J.—On the day that the murder was committed, the defendant herein, with his co-defendant in the indictment and others, were together near the east end of the Chicago & North-Western Railway switch tracks in the city of Marshalltown. They were drinking beer there, and the evidence shows that the defendant and John Gray were both at the time intoxicated. Shortly before Joseph Williams was killed, two young girls had passed over the railroad tracks near where these parties were, and there met and had some difficulty with two or three other girls. During this difficulty the evidence shows that John Gray went up to the girls, and prevented further trouble among them. Very soon after this occurrence, Joseph Williams came upon the scene. It seems that he thought the girls had been abused or insulted by these men and stopped to talk with them about the matter. Gray, the defendant, and others, went to the wagon in which Williams was riding, and a wordy altercation then took place between Williams and Gray. Williams was invited to get out of the wagon and fight but refused to do so. When Dunn attempted to get into the wagon with him, he threatened to strike him with a whip, whereupon the defendant said that "if he hit him they would fix him so that he would not breathe again." Williams went on to his home, a short distance away, remained there but a little time, then took his revolver, and went back to the place where the defendant and his companions were. A son of the dead man testifies (and this is uncontradicted) that when his father got there his revolver

and money were taken away from him by the defendant and John Gray and that his father then got away from them and ran; that he was followed by Gray and the defendant; and that Gray shot his father in the back while he was running away from them. Another eye witness of the shooting testifies that the two men who were the closest in pursuit of Williams both had revolvers in their hands when he fell. Williams was struck by but one bullet, so far as the evidence shows, though three or four shots were fired at him.

He fell some distance from where the chase began, and was shot in the back. The indictment charges that the defendants assaulted the deceased, but does not charge that the assault was willful. It proceeds, however, as follows: "And then and there said John Gray and Pat Dunn did, with specific intent to kill and murder the said Joseph Williams willfully, feloniously, deliberately, premeditatedly, and of their malice aforethought, shoot off and discharge the contents of said deadly weapon  *  *  * at, against, into and through the body of the said Joseph Williams." While the word "willful" is not used in charging that an assault was made upon the deceased, it will be seen that it is used in the specific charge that they shot and killed him. The indictment in *State v. McCormick,* 27 Iowa, 402, was held insufficient for the reason that it did not charge that the blow was dealt with the intent to kill, or that the killing was willful, deliberate, and premeditated, though it did charge the assault to have been so made. It is the willful, deliberate, and premeditated killing which constitutes murder in the first degree, under the statute, and not simply the assault. *State v. McCormick, supra.* The indictment clearly charges murder in the first degree. *State v. Gray,* 116 Iowa, 231.

The state served a notice upon the defendant, under section 5373 of the Code, that it would use as a witness

against him Lee Wood, whose occupation was that of a laborer. When the witness was called, he testified that his name was Earnest Lee Wood, but that he was commonly called Lee Wood. He also testified that at the time the notice was served he was confined in the county jail, but said that he was a laborer. It is not shown that the defendant was in any way misled or prejudiced by the failure to give the full name of the witness in the notice, or by the fact that he was not then at work. His testimony was therefore properly received. *State v. Arnold,* 98 Iowa, 253; *State v. Dale,* 109 Iowa, 97.

Charles Stepan, a witness for the state, was permitted to testify as to the conduct of Gray when he and the defendant were at the wagon of the deceased. It was entirely proper to show what took place in that altercation. Whether the defendant was actively engaged therein or not, he was present, and there is evidence tending at least to show that he was a participant therein.

There was a question as to the identification of the defendant as one of the parties who was following Williams when he was shot. A witness who testified that he saw the defendant in the chase, and that he then had a revolver in his hand, also said that he had seen him in Oelwein before that time, and was permitted to state when he had seen him there. There was no error in allowing the witness to thus state when he had seen the defendant. The testimony was competent in support of his identification of him at the time of the shooting.

There was testimony that immediately after the shooting some of the parties who had been in pursuit of the deceased went back to their drinking place, and emptied the cartridges out of a revolver. A witness was then permitted to testify to finding three empty cartridges there. This evidence was certainly competent. The bullet which killed Williams was taken from his body after death and it was a part of the state's case to show that the

empty cartridges found by the witness were of the same kind and size as the one from which the fatal bullet was fired.

There was no error in admitting evidence as to the companionship of Gray and this defendant. If Gray actually did the killing and the defendant was present at the time, the evidence would be competent as tending to show the relations between the two at that particular time.

A witness was permitted to testify that the defendant had left a revolver with him for an hour or two the night before the shooting in question. While the witness did not examine the weapon, and it was not identified as the one with which the killing was done, it was nevertheless competent to prove that the defendant had been in possession of such a weapon only 24 hours before.

After the defendant was committed to the jail of the county to await his trial on this charge, tools calculated to facilitate his escape therefrom were found secreted under the mattress of his bed, and two or three iron bars of an outside window had been partially sawed through. Two inmates of the jail were used as witnesses for the state. One testified that he had seen the defendant at work, sawing the iron bars. The other was permitted to testify, over the defendant's objection, that he had seen two men at the window in question, but that he could not identify them, or tell certainly who they were. This evidence was not incompetent. It tended to corroborate the other witness, and to show that the work was done from the inside of the jail. Its weight was for the jury.

The defendant was not allowed to prove the conviction of Gray under this same indictment. It is very evident that it would have been error for the court to allow the state to show such conviction as a reason why the defendant should be convicted, and, if Gray had been acquitted, we hardly think counsel would claim

such acquittal competent evidence of the innocence of his client. Upon what theory, then, evidence of Gray's conviction was competent in behalf of the defendant, we do not see. The jury in this case could not retry Gray's case, and determine whether he was rightly or wrongly convicted; and unless they could do this, and then distinguish between the two cases, the offered evidence would not be competent.

The trial court very carefully instructed the jury on all branches of the case. It was instructed that it must determine the guilt or innocence of the defendant from the evidence alone, and that it was to judge of the credibility of the witnesses, and of the weight and value of their testimony. Instructions were given fully covering the question of reasonable doubt, and again telling the jury what they must find from the evidence before a conviction could be had, and guarding the jury against popular prejudice.

Complaint is made of the language of the fifth paragraph of the court's charge. It is as follows:

"In this case, if you find from the evidence, as you are instructed you must, and under the law as given you herein, that the defendant is guilty of a crime of which he can be convicted under this indictment, you must then determine of what degree or included crime he is guilty."

We do not think, however, that the criticism as to the effect of this instruction is just. The construction of the paragraph, and the language used therein, may properly be criticised, perhaps, and a case might be presented where we would feel it our duty to reverse on account of the obscure meaning of some of the language used; but we are firmly convinced that the charge, taken as a whole, must have thoroughly impressed the jurors with the thought and understanding that they were the only ones who could pass upon the sufficiency of the evidence, and that they must have understood the court as it meant to be understood in

the instruction in question,—that their finding must be based upon the evidence, and nothing else.

In the seventeenth and eighteenth paragraphs of its charge, the court correctly stated to the jury the law relating to one who aids and abets the commission of a crime. The jury was told that any one who "is present, and aids, abets, assists, advises, or encourages" the act, is guilty as a principal. This instruction in no way conflicts with the rule announced in *State v. Wolf*, 112 Iowa, 458. In that case the jury was instructed that if the defendants were present, "or so near as to give the acts countenance and support," they were guilty To constitute aiding and abetting, it is not necessary that the principal be encouraged by words. The facts of the defendant's presence may alone, under some circumstances, bring him within the rule of the statute, and it then becomes a question of fact for the jury to determine, under proper instructions.

Finally, it is contended that the evidence does not warrant the submission of the case to the jury on the charge of murder in the first degree, and that the verdict is not supported by the evidence. As we have already stated, there was an altercation, in which the defendant joined, some 30 minutes before the killing was done. The defendant then threatened the deceased. He afterwards assisted in taking his revolver and money. He then followed him, when he was trying to escape; and this, too, with a revolver in his hand. That the deceased was foully murdered while attempting to get away from this gang cannot be denied, and we think every element necessary to support the charge in the indictment was present, and was properly given to the jury. What we have already said furnishes an answer to the claim of the insufficiency of the evidence. If the jury believed the state's witnesses,—and they were practically uncontradicted,—the verdict is well supported, and should not be disturbed. The judgment inflicts the maximum punishment provided by law. This

we, cannot interfere with.   If the verdict is right, as we think it clearly is, the punishment is none too severe for the crime committed.

The judgment is AFFIRMED.