STATE of Missouri, Respondent,

v.

Jackie E. SWEARINGIN, Appellant.

No. 10597.

Missouri Court of Appeals,
Springfield District.

March 22, 1978.

Motion for Rehearing or Transfer
Denied April 10, 1978.

Application to Transfer Denied
May 9, 1978.

Robert H. Handley, Springfield, for appellant.

John D. Ashcroft, Atty. Gen., Nanette K. Laughrey, Asst. Atty. Gen., Jefferson City, for respondent.

Before STONE, P. J., and HOGAN and FLANIGAN, JJ.

FLANIGAN, Judge.

Defendant Jackie E. Swearingin, charged as a second offender (§ 556.280),[1] was found guilty by a jury of murder in the second degree (§ 559.020), and was sentenced by the court to 40 years' imprisonment. Defendant appeals.

On June 19, 1976, in a bar known as the Jockey Club in Springfield, Missouri, Larry Brown was stabbed with a knife during a brawl. He died six days later as a direct result.

On July 29, 1976, a felony information was filed, naming appellant and his brother Ricky Swearingin as defendants. Each filed a motion for separate trial and separate trials were ordered. In November 1976 Ricky Swearingin was found guilty of manslaughter in connection with the death of Larry Brown and received a sentence of two years.

The amended information against defendant, upon which the instant case was tried, in addition to alleging a prior conviction, charged the defendant with the murder of Larry Brown. That information is the only one shown in the instant record. The original information filed against the two defendants is not shown and this record does not contain any portion of the proceedings in the case against Ricky. Defendant's trial took place in January 1977.

---

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1969, V.A.M.S.

Defendant's brief contained six "points relied on." In the argument portion of his brief under four of those points, defendant makes repeated references to Ricky's case and alleged happenings therein. Only Ricky's conviction of manslaughter and his sentence of two years therefor are supported by this record. Defendant alludes, however, to other features of Ricky's case, none of which is shown in this record. Those features include pleadings, evidence, instructions and arguments of counsel.

Defendant's brief says that "the central issue in this appeal is the state's improper conduct in attempting to convict defendant of the crime committed by Ricky." Seeking to invoke the doctrine of res judicata, defendant argues that the degree of the offense of which Ricky was convicted, the length of Ricky's sentence, and the unsubstantiated happenings in Ricky's case all have controlling effect upon the state's case against defendant. Defendant suggests that this court "call up the file" in Ricky's case in order to verify defendant's assertions of what took place in those proceedings.

Rule 84.03 provides, in part, that this court "may of its own motion, at any time, require the clerk of the trial court to send up a complete transcript or any portion thereof or any original documents or exhibits." In *State v. Collett*, 526 S.W.2d 920, 927–929 (Mo.App.1975) the defendant filed a motion asking the court of appeals to order the clerk of the circuit court to send up the record in a case against a fellow criminal. The court denied the motion and held that Rule 84.03 did not authorize its sustention. The court said, at p. 929, "[Rule 84.03] authorizes us to require the clerk to send up a complete transcript or a portion thereof or any original documents or exhib-

its *in the case tried before the circuit court* and does not authorize us to order up any and all matters that may have some relation to the cause on appeal." (emphasis added) On the same page the court said, "We may consider only those matters presented on the record made in the lower court."

In addition to the foregoing procedural obstacle confronting defendant, there are deeper and more compelling reasons for rejecting his contention that various aspects of the case against Ricky have controlling effect upon this case.

The evidence in the case at bar showed that defendant and Ricky jointly participated in the barroom brawl during the course of which Larry Brown was fatally stabbed. Although there was evidence offered by the defendant showing that Ricky, rather than defendant, was the man who fought Brown, the state's evidence was overwhelmingly to the effect that defendant alone was Brown's assailant and that it was defendant, and not Ricky, who inflicted the mortal wound. One witness testified that he knew defendant fought Brown and that he thought Ricky did so.

■ In support of his assertion that Ricky's conviction of manslaughter is a bar to defendant's conviction for a higher degree of homicide, defendant relies upon res judicata. Such reliance is unwarranted for the reason that defendant was not a party to the separate trial against Ricky and was in no way affected by the judgment and sentence therein. *State v. Couch*, 341 Mo. 1239, 111 S.W.2d 147, 150[9–11] (1937); *State v. Bradley*, 361 Mo. 267, 234 S.W.2d 556, 558[2–4] (Mo.1950). See also *State v. Aubuchon*, 381 S.W.2d 807, 815[14–17] (Mo. 1964).[2] A judgment in a criminal case oper-

---

2. "We have held that it is error to show in evidence or to tell the jury that a jointly accused defendant has been convicted or has pleaded guilty. *State v. Mull*, 318 Mo. 647, 300 S.W. 511; *State v.· Stetson*, Mo., 222 S.W. 425; *State v. Castino*, Mo., 264 S.W.2d 372; and see 2 Wharton Cr.Evi. (12th Ed.) § 439, p. 215. So, also, have we held that evidence of the acquittal of one jointly accused is improper. *State v. Recke*, 311 Mo. 581, 278 S.W. 995, 1000; *State*

v. Brown, 360 Mo. 104, 227 S.W.2d 646, 653. Were this not the law, the value of a defendant's right to a separate trial under § 545.880 and Rule 25.07 might be considerably dissipated. The theory of our statute abolishing the distinction between principals and accessories, § 556.170, is that every defendant who joins in the commission of a crime is liable, *on his own*, as a principal; but he is also entitled to be tried on his own without having his guilt prejudged

ates as res judicata in a second criminal case only where the parties to both proceedings are identical. *United States v. Musgrave,* 483 F.2d 327, 332[2, 3] (5th Cir. 1973); *Smith v. United States,* 243 F.2d 877 (6th Cir. 1957); Anno. 9 A.L.R.3d 203, 218 (Res Judicata—Criminal Cases). It is also true that defendant was not placed in jeopardy by the conviction of his co-perpetrator Ricky. *United States v. Coppola,* 526 F.2d 764, 776[19] (10th Cir. 1975).

In *State v. Couch,* supra, one DeMore pleaded guilty to a murder charge and was sentenced to the penitentiary. Later defendant was charged with the same offense. The state's evidence showed that only one person committed the offense. Defendant relied upon DeMore's conviction to bar his own. In rejecting that contention the court said, at 111 S.W.2d p. 150, "The conviction of DeMore for the offense charged could not be pleaded in bar by appellant, because appellant was not a party to that prosecution and was in no way affected by that judgment. Whether DeMore was rightfully or wrongfully convicted was no concern of appellant's." The court also said, "The issue before the court and jury was the guilt or innocence of appellant and not of DeMore."

In *State v. Bradley,* supra, defendant was convicted of murder in the first degree. Co-perpetrators of the same murder, prosecuted in separate cases, were convicted of murder in the second degree. The court rejected defendant's contention that the *degree* of the crime for which his co-perpetrators were convicted was res judicata in his case. The court said, at 234 S.W.2d p. 558, "Defendant-appellant *was not a party defendant* in the [co-perpetrators'] cases . . . The disposition of [the co-perpetrators' cases] to which he was not a party, was of no concern to defendant herein." (emphasis in original) The court also held that the judgments in the co-perpetrators' cases "could not have been pleaded in bar by defendant, nor was evidence of the disposi-

by what has happened to his co-defendant." (emphasis in original) *State v. Aubuchon,* supra, at p. 815.

tion of those cases admissible in the instant case."

■ Although defendant does not specifically refer to the doctrine of "collateral estoppel," it is clear from his brief's general tenor that he is advancing that theory in support of his claim that certain aspects of the proceedings against Ricky affect the case at bar.

" 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated *between the same parties* in any future lawsuit." (emphasis added) *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970).

The doctrine of collateral estoppel, as it pertains to criminal cases, was discussed at length by the Supreme Court of Pennsylvania in *Com. v. Brown,* 375 A.2d 331 (Pa. 1977). Citing numerous authorities[3] from many jurisdictions, the court said, at p. 334:

"Collateral estoppel principles may be applicable in some criminal cases as well as civil cases, but the scope of the doctrine as applied in criminal cases is not coextensive with that applied in civil cases, particularly where, as here, collateral estoppel is invoked on behalf of a defendant who was not a party to the prior adjudication. See generally Annot., 9 A.L.R.3d 203 (1966). Traditionally, collateral estoppel has been limited by, *inter alia,* the rule of mutuality; that is, *collateral estoppel does not operate unless the party seeking to take advantage of it would have been likewise bound by an adverse judgment in the prior adjudication.* In the context of civil litigation, this mutuality requirement has been eroded in recent years and the modern trend has been for courts to abandon it. . . . *In the context of criminal litigation, however, the*

**3.** The authorities cited include *State v. Bradley,* 234 S.W.2d 556 (Mo.1950) discussed earlier in this opinion.

concept of mutuality has retained its vitality. Collateral estoppel has generally been applied only in those criminal cases involving defendants who were parties to the prior adjudication. . . . The majority rule remains that a judgment of acquittal of one criminal defendant does not prevent the relitigation of an issue or controversy in the prosecution of another criminal defendant, even though the same transaction is involved." (emphasis added)

This court concludes that the separate proceedings against Ricky have no effect upon the instant case and that defendant's reliance upon the doctrines of res judicata, double jeopardy, and collateral estoppel is not justified. Accordingly, the following discussion of defendant's points lays aside those arguments of defendant which are based on what he claims to have transpired in Ricky's case.

■ Defendant's first point is that the trial court erred in overruling defendant's motion for acquittal, offered at the close of the state's evidence and renewed at the close of all the evidence, for the reason that "the verdict is against the weight of the credible evidence." The state's evidence justified the jury in finding that the defendant, unprovoked by the victim, stabbed him with a knife and thereby intentionally caused his death. Moreover, it is not the function of this court to determine the credibility of the witnesses or to weigh the evidence. State v. Small, 423 S.W.2d 750, 751[2] (Mo.1968); State v. Berry, 526 S.W.2d 92, 95[3] (Mo.App.1975). Defendant's first point has no merit.

Defendant's second point is that the trial court erred in overruling defendant's motion to reduce the charge against defendant from second degree murder to manslaughter. The sole ground on which this alleged error is predicated is that Ricky was previously convicted of manslaughter and thus, says defendant, he could not be convicted of a higher degree of homicide. This point is without merit as demonstrated by the authorities discussed prior to the statement of defendant's first point.

■ Defendant's third point is that the trial court erred in failing "to instruct on Assault with Malice Aforethought (MAI–CR 6.22) or Assault Without Malice Aforethought (MAI–CR 6.24) or Common Assault (MAI–CR 6.26)." At the trial defendant did not request that any of the three mentioned instructions be given. During the instruction conference the court asked defendant's counsel if he wished any additional instructions and counsel replied, "No." The instant point was presented initially in the motion for new trial.

The state's evidence was to the effect that the defendant, unprovoked by the victim, stabbed him with a knife and thereby caused his death. The defendant's evidence, in essence, was that Ricky was the knife wielder and that defendant took no part in the brawl or in the fatal contest itself.

In State v. Gadwood, 342 Mo. 466, 116 S.W.2d 42 (1938) defendant was convicted of manslaughter for the killing of one Flacey. On appeal defendant assigned error in the trial court's failure to instruct on assault with intent to kill or do great bodily harm. Defendant relied upon two statutes which are now § 556.220 and § 556.230.

At p. 55[19] the court said:

"But in spite of these statutes [§ 556.220 and § 556.230] appellant's contention is untenable because of another statute which has been in the books for more than 100 years, Section [556.160] providing that: 'No person shall be convicted of an assault with an intent to commit a crime, or of any other attempt to commit any offense, when it shall appear that the crime intended or the offense attempted was perpetrated by such person at the time of such assault or in pursuance of such attempt.' The words in the statute 'when it shall appear' do not mean when it shall appear conclusively or without dispute; they mean when it shall appear from substantial evidence." (emphasis added)

On the following page the court said:

"[I]t indicates the purpose of [§ 556.160]. Construed with sections [§ 556.220 and

§ 556.230], supra, the three statutes evidently mean that if substantial evidence shows the crime charged was consummated the defendant cannot be convicted of a mere *attempt*. He cannot go to the jury on a charge so light in the face of a prima facie case showing the graver offense was committed; but if the State's evidence fails to establish commission of the crime and does show an attempt thereto the jury may convict on the latter theory under the original charge without the necessity of instituting a new proceeding. In the instant cause the State made a prima facie case of murder. That being so, the appellant was not entitled to an instruction on felonious assault." (emphasis in original)

Defendant's third point has no merit; *State v. Gadwood*, supra; see also *State v. Villinger*, 237 S.W.2d 132, 135[8–9] (Mo. 1951); *State v. Adams*, 380 S.W.2d 362, 370[18] (Mo.1964); *State v. Charles*, 537 S.W.2d 855, 856[1–3] (Mo.App.1976).

Defendant's fourth, fifth and sixth points are presented without citation of authorities and thus each fails to meet the requirements of Rule 84.04(d).

Defendant's fourth point is that the trial court erred in giving, over the objection of defendant, Instruction No. 7 (MAI–CR 2.10). Defendant claims that the instruction is not supported by the evidence but this court's review of the record discloses that the instruction was properly given and is not subject to the complaint defectively advanced. See *State v. Connell*, 523 S.W.2d 132, 136[3, 4] (Mo.App.1975); *State v. Mandina*, 541 S.W.2d 716, 719[4] (Mo.App.1976).

 Defendant's fifth point is that the trial court erred in refusing to receive evidence of Ricky's conviction. This was error, argues defendant, because (a) once it had been determined at Ricky's trial that Ricky was "the actual killer of Larry Brown" it was improper "to keep that information from the jury and allow the state to infer (sic) that Jackie was the actual killer" and (b) the state shifted its position from arguing that Ricky was the actual killer to arguing that Jackie was the actual killer.

The court did not err in refusing to receive evidence of the fact of Ricky's conviction. *State v. Dunn*, 116 Iowa 219, 89 N.W. 984, 986[9] (1902);[4] *Martin v. State*, 151 Tex.Cr.R. 212, 206 S.W.2d 254, 255[3] (1947), 22A C.J.S. Criminal Law § 784, p. 1191. See also *State v. Aubuchon*, 381 S.W.2d 807, 815[14–17] (Mo.1964), quoted in footnote 2. Ricky did not testify, so the use of his conviction for impeachment is not involved. Defendant was, of course, permitted to introduce evidence that Ricky, and not Jackie, was the knife wielder and he did so. Reason (a) has no merit. There is nothing in the instant record to show a factual basis for reason (b). Defendant's fifth point has no merit.

Defendant's sixth point is that the trial court committed error in replacing a venireman, successfully challenged for cause, with another venireman. This court has made a gratuitous examination of that portion of the record dealing with the incident and no error appears. See *State v. Henson*, 552 S.W.2d 378, 381[7] (Mo.App. 1977).

The judgment is affirmed.

All concur.

4. "The defendant was not allowed to prove the conviction of Gray under this same indictment. It is very evident that it would have been error for the court to allow the state to show such conviction as a reason why the defendant should be convicted, and, if Gray had been acquitted, we hardly think counsel would claim such acquittal competent evidence of the innocence of his client. Upon what theory, then, evidence of Gray's conviction was competent in behalf of the defendant, we do not see. The jury in this case could not retry Gray's case, and determine whether he was rightly or wrongly convicted; and unless they could do this, and then distinguish between the two cases, the offered evidence would not be competent." *State v. Dunn*, supra, at p. 986.