STATE of Missouri, Respondent,

v.

William FONDREN, Appellant.

William FONDREN, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 55522, 58999.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 4, 1991.

---

Lew A. Kollias, Columbia, for appellant.

William L. Webster, Atty. Gen., Geoffrey W. Preckshot, Asst. Atty. Gen., Jefferson City, for respondent.

**GARY M. GAERTNER**, Presiding Judge.

Appellant, William Fondren, appeals from his jury conviction of second degree assault. Appellant requested that the trial court determine his sentence and the court sentenced him to six years imprisonment. Appellant filed a *pro se* Rule 29.15 motion on January 25, 1989, which was denied without an evidentiary hearing on August 8, 1990. The facts, briefly stated, showed the following.

Around 7:00 p.m. on October 29, 1987, appellant entered the Riverboat Lounge in Cape Girardeau, Missouri. Appellant proceeded to get into an argument with a patron of the lounge, Dennis Tilden, who was playing pool with John Lupo.[1] Lupo told appellant that he should leave Dennis alone since Dennis was merely minding his own business. Appellant's version of Lupo's admonition is slightly more blunt; Lupo told appellant that if appellant did not leave, Lupo would kick his brains in.

Appellant did leave, however, and joined James Dodd and Wally Jackson at the Central Inn, another bar in Cape Girardeau. The three of them decided to go to Corky's Lounge. They travelled in Dodd's[2] automobile. They arrived around 10:00 p.m. to 10:30 p.m. Shortly thereafter, Lupo arrived and asked Dodd for money. After Dodd refused and turned in order to continue playing pool, Dodd heard appellant and Lupo argue. When Dodd again faced the combatants, he saw Lupo strike appellant a couple of times. Although appellant had a pool stick in his hand, appellant did not hit Lupo with it.

Corky's bartender broke up the meleé and directed Lupo out the front door of the establishment and appellant was instructed to leave via the back door. Lupo exited with a woman and stopped to talk with her near his automobile. Appellant was guided outside by Dodd and Jackson, however, when the three of them were outside appel-

---

1. Mr. Lupo will be referred to hereinafter as Lupo and Mr. Tilden will be referred to as Dennis. We do not intend to be disrespectful by such reference.

2. We will refer to James Dodd as Dodd and to Wally Jackson as Jackson for brevity. We do not intend any disrespect to either gentlemen.

lant grabbed Dodd's knife and declared that he was going to "get" Lupo.

Appellant then ran around Corky's and towards Lupo, followed by Dodd and Jackson. When he reached Lupo, he lunged at him and cut him several times with Dodd's knife. Lupo was cut on his face, back and under his arms. Lupo's facial cut required thirty-five stitches. Dodd and Jackson arrived and separated appellant and Lupo. Appellant then ran toward the back of Corky's and was caught by the police shortly thereafter.

Lupo was convicted on January 11, 1988, of peace disturbance for the fight which took place inside Corky's. The prosecutor at Lupo's trial argued to the court that Lupo was the initial aggressor in the incident.

Appellant was charged with assault in the second degree for stabbing Lupo. Appellant's jury trial took place on July 8, 1988, and the jury found appellant guilty as charged later that same day. Appellant was sentenced by the court to six years imprisonment on September 19, 1988.

Appellant's two points relied on in his direct appeal of his conviction and sentence concern the same issue; whether collateral estoppel should have prevented the State from arguing in appellant's trial that appellant was the initial aggressor when the State had argued that Lupo was the initial aggressor during Lupo's trial for peace disturbance. We answer appellant's query in the negative for the following reasons.

■ The State, during its opening statement, represented to the jury that appellant, while inside Corky's Lounge, placed his hand upon Lupo's shoulder, pulled him around and started to strike at him with a pool cue. The State also told the jury, later during opening statements, that appellant instigated the fight inside the bar. Appellant, at the end of the State's opening statement, asked the court to declare a mistrial because the State was taking the position that appellant was the initial aggressor inside Corky's when the State had argued that Lupo instigated the dispute during Lupo's trial. The trial court denied appellant's request. Appellant is under a duty to object to actions which he believes are improper at the earliest instance. *State v. Cannady*, 660 S.W.2d 33, 37 (Mo.App., E.D.1983). Since appellant waited until after the State was finished with its opening statement, we can only review the record for plain error. Rule 30.20.

■ Likewise, appellant failed to timely object when the State argued that appellant was the initial aggressor during the State's closing argument. The relevant portion of the argument, including appellant's untimely objection, follows:

There was an altercation inside. State's evidence shows William Fondren caused that altercation. He caused the fist fight, or that he was using a pool cue.

He was mad before he even went to that bar. he had gotten into an argument, not with the victim John Lupo, he had gotten into an argument with a third party. He was arguing plenty that night. He was angry. He was in a fighting mood when he got there.

[Defense counsel]: Your Honor, I am going to object. the prosecutor's last couple of statements in closing argument. Maybe we could approach the bench very briefly.

THE COURT: I am going to overrule your objection. You may continue.

Appellant's vague objection to the prosecutor's "last couple of statements" occurred well after the statements which appellant now asserts were improper.

■ Appellant argues that the State should be collaterally estopped from arguing that appellant was the initial aggressor since the State had argued that Lupo was the initial aggressor in his trial for peace disturbance. Collateral estoppel applies to criminal proceedings, however, the appellant must establish that the prior verdict *necessarily decided* the issues now in litigation. *State v. Coleman*, 773 S.W.2d 199, 201 (Mo.App., E.D.1989). Lupo was convicted pursuant to RSMo § 574.010 (1986), which in relevant part provides:

**574.010. Peace disturbance**

1. A person commits the crime of peace disturbance if:

(1) He unreasonably and knowingly disturbs or alarms another person or persons by:

.    .    .    .    .

(d) Fighting;

■ Since it is clear that Lupo's conviction under this statute did not require that the fact finder believe that Lupo instigated the fight, it cannot be said that this issue was necessarily decided for purposes of collateral estoppel.

■ More fundamentally fatal to appellant's point on appeal, however, is the doctrine of mutuality. While the doctrine of mutuality of parties has been greatly eroded, if not eliminated, in the civil arena, collateral estoppel only applies to bar relitigation of the same issue in criminal cases *between the same parties.* *State v. Swearingin,* 564 S.W.2d 351, 354–55 (Mo. App., Spfld.Dist.1978); *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970).[3] Hence, even if the issue was necessary to and decided in Lupo's trial, the State was not collaterally estopped from re-litigating the issue in appellant's case.

In *State v. Couch,* 111 S.W.2d 147 (Mo. 1937), a police officer was shot and killed while he was investigating an attempted robbery which had just occurred. Before his death, the officer identified a man named DeMore as his assailant, as did the motor-man of the streetcar that was the subject of the attempted robbery. DeMore ultimately confessed (after originally strenuously denying any involvement in the crime) and he was convicted of murder. *Couch,* 111 S.W.2d at 147–48.[4]

George Couch was arrested while DeMore was serving his life sentence and an investigation of Couch uncovered evidence which implicated him in the murder. *Id.* at 148. On appeal from his conviction of murder in the first degree, Couch argued that the State was collaterally estopped from arguing that he committed the crime since the State had argued that DeMore had murdered the officer in DeMore's case. *Id.* at 150.

The Missouri Supreme Court rejected appellant's argument in no uncertain terms. The court held as follows:

> The conviction of DeMore for the offense charged could not be pleaded in bar by appellant, because appellant was not a party to that prosecution and was in no way affected by that judgment. Whether DeMore was rightfully or wrongfully convicted was no concern of appellant's.... The state, ... was not estopped, by the previous conviction of DeMore, to prosecute another person for the same offense, even though it was conceded that only one person committed the offense.... So whether DeMore was convicted and afterwards pardoned, or not pardoned and the conviction remained in force, was no concern of appellant's. The issue before the court and jury was the guilt or innocence of appellant and not of DeMore.

*Id.*

In *Swearingin,* the defendant and his brother were involved in a barroom brawl with Larry Brown. Brown died as a result and the Swearingin brothers were charged with murder. In a separate trial, defendant's brother, Ricky, was found guilty of manslaughter and received two years imprisonment. *Swearingin,* 564 S.W.2d at 352. The defendant in *Swearingin* was convicted of second degree murder and received a forty year sentence. On appeal, defendant claimed that res judicata and collateral estoppel applied to estop the State from convicting defendant of a higher degree of homicide than Ricky received for the same incident. *Id.* at 353–54.

The Springfield District of the Missouri Court of Appeals rejected appellant's position, specifically relying on the absence of

---

**3.** For an excellent discussion of collateral estoppel as it applies in criminal cases, the reader is directed to *People v. Allee,* 740 P.2d 1 (Colo. 1987).

**4.** DeMore was pardoned by the Governor prior to George Couch's trial.

mutuality of parties and on *State v. Couch. Id.* at 353–55.

We find, also, that since appellant was not a party to the criminal proceedings against Lupo, any issue which may have been litigated or any position that the State may have taken in that case does not limit the State in its prosecution of appellant. Collateral estoppel does not apply. Point denied.

Appellant's *pro se* Rule 29.15 motion, which was timely filed on January 25, 1989, did not raise issues which entitled him to an evidentiary hearing. This is conceded by appellant on appeal.

On March 14, 1989, the public defender's office moved for an extension of time to obtain counsel and for an extension of time to amend appellant's *pro se* motion. The court allowed counsel an extension of time with which to amend appellant's *pro se* motion until May 3, 1989. On March 29, 1989, an entry of appearance was filed by an attorney on behalf of appellant.

However, no amendment was forthcoming. On October 12, 1989, the court denied appellant relief without an evidentiary hearing. However, on November 10, 1989, the court set aside its denial and granted appellant an additional 30 days with which to amend his *pro se* motion. Appellant's attorney of record was allowed to withdraw and the public defender's office was ordered to represent appellant.[5] On November 22, 1989, another entry of appearance was filed by an attorney with the public defender's office on behalf of appellant. However, appellant's *pro se* motion was never amended and the court denied appellant's *pro se* motion without a hearing on August 8, 1990.

The court afforded both counsel more than adequate time with which to file an amended motion and the court's denial of relief was in accordance with the plain language of Rule 29.15. However, Rule 29.-

15(e) specifically obligates appellant's appointed counsel to determine whether an amendment to appellant's *pro se* motion is needed. Rule 29.15(e) provides:

**(e) Pro Se Motion—Appointment of Counsel—Amended Motion, Required When—Withdrawal of Appointed Counsel.** When an indigent movant files a pro se motion, the court shall cause counsel to be appointed for the movant. Counsel shall ascertain whether sufficient facts supporting the grounds are asserted in the motion and whether the movant has included all grounds known to him as a basis for attacking the judgment and sentence. If the motion does not assert sufficient facts or include all grounds known to the movant, counsel shall file an amended motion that sufficiently alleges the additional facts and grounds.

A recent Supreme Court decision, *Luleff v. State,* 807 S.W.2d 495 (Mo. banc 1991) addressed the situation where counsel for a 29.15 litigant failed to enter an appearance and did not file an amended motion. In addition, there was no indication in the record that counsel communicated with the movant. *Id.* at 498. The Supreme Court, classifying counsel's inaction as an abandonment of the movant, remanded the case to the motion court for a determination of whether appointed counsel complied with Rule 29.15(e). *Id.*[6] If the motion court determined on remand that counsel's inattention resulted from the movant's negligence or intentional failure to act, then the movant is not entitled to relief beyond his *pro se* motion. *Id.* at 498. If, however, counsel failed to act on movant's behalf, the court was required to appoint new counsel and provide the new counsel with time to amend the motion pursuant to Rule 29.15(f). *Id.*

The same day that *Luleff* was decided, the Missouri Supreme Court addressed a case in which an attorney had entered his appearance on movant's behalf but failed

---

**5.** The record does not reveal whether the appellant's first 29.15 counsel was with the public defender's office.

**6.** *Luleff* also provided that, in the future, where counsel abandons the movant, the motion court

shall, sua sponte, make inquiry of the performances of counsel and movant. The trial court, in our case, could not be expected to anticipate such a holding.

to timely file an amended motion. *Sanders v. State*, 807 S.W.2d 493 (Mo. banc 1991). Two more attorneys subsequently entered their appearances on behalf of the movant and filed untimely pleadings with the court. At 494. The court dismissed the untimely pleadings. *Id.* at 494.

The Supreme Court held that the actions of counsel were a form of abandonment and remanded the case to the motion court so that it could determine whether the untimeliness of the amendments to the *pro se* motion resulted exclusively from counsel's action or inaction. *Id.* at 495. If so, then the Supreme Court stated that the amendment should be treated as timely filed and considered by the motion court. *Id.*

■ The clear mandate of *Luleff* and *Sanders* is that where the record does not indicate why counsel failed to comply with his obligation to a 29.15 litigant, the motion court must determine, either sua sponte or upon remand, whether the fault lies with counsel or movant. In the present case, although two entries of appearance were filed, there is absolutely nothing in the record which suggests that either counsel determined whether an amendment to appellant's *pro se* motion was necessary.

Therefore, we remand the case to the circuit court solely for its determination of whether the failure to file an amended Rule 29.15 motion resulted exclusively from counsel's action or inaction. If it finds that such failure was the exclusive result of counsel's action or inaction, then new counsel shall be appointed to represent appellant and additional time shall be granted under Rule 29.15(f) with which to file an amended motion.

CRIST and AHRENS, JJ., concur.