STATE of Missouri, Respondent,

v.

John M. CLARK, Appellant.

No. WD 33053.

Missouri Court of Appeals,
Western District.

Feb. 1, 1983.

Peter M. Schloss, Asst. Public Defender, Liberty, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

NUGENT, Presiding Judge.

John Clark was convicted by a jury of robbery first degree, § 569.020 [1], and was sentenced to thirty years imprisonment. He appeals his conviction on the grounds that the state improperly informed the jury that the other person involved in the robbery was his brother when in fact, his brother had been acquitted of the charge one week before defendant's trial. We reverse and remand for new trial.

On the evening of July 8, 1980, two armed men robbed the Ponderosa Steak House in Gladstone, Missouri. One of the two men carried a shotgun and the other a handgun. Defendant and his brother, William Clark, were arrested and charged with the robbery. One week before defendant's trial, William Clark was acquitted in a separate jury proceeding.

At trial, the state produced fourteen witnesses present at the robbery scene. All of these witnesses identified the defendant as the man wielding the handgun. The physical descriptions of the handgunman, however, varied greatly. Nine of the witnesses said that the gunman did not wear glasses; four said that he did. Eight said that he did not have a mustache; four said that he did. Three described him as clean-shaven; eight said he was in need of a shave. Seven observed a hat on his head; five did not.

---

1. All sectional references are to Revised Statutes of Missouri, 1978.

The color of his hair was described by one witness as "blondish", while to others it was black and greasy. The texture ranged from straight to "frizzed" and "bushy, curly." Four witnesses observed him wearing a light-colored, short-sleeved T-shirt, although the same shirt was also described as long-sleeved and dark blue, long-sleeved and plaid, and flannel with a checked pattern. None of the witnesses, including those who observed a short-sleeved shirt, remembered any tattoos on the gunman's arms. The defendant had a large tattoo on his right arm. Many of the witnesses described the handgunman as 5′ 8″ or 5′ 9″ tall and weighing from 130 to 170 pounds, yet the defendant produced evidence that he was 6′ 0″ tall and that although he weighed 170 pounds at the time of trial, he had weighed 200 pounds at the time of the robbery.

The defendant relied on an alibi defense. He called one witness, Larry Vancell, who testified that John Clark was with him at the time of the robbery, watching the All-Star game on television all evening.

In his opening statement at trial, the prosecutor alleged that "the defendant, acting in concert with a person identified as his brother, William Clark, held up the Ponderosa Steak House." Out of the hearing of the jury, the defendant objected, arguing that the prosecutor could not allege any involvement of defendant's brother in the crime because William Clark had been acquitted one week earlier. The trial court overruled defendant's objection, stating that the acquittal was a "collateral proceeding."

Later, the prosecutor asked several witnesses if the person appearing in certain photographs admitted as state's evidence was "William Clark, the defendant from last week." Defendant did not object to these questions.

When John Clark took the stand, defense counsel attempted to ask him whether he had been present when William Clark was acquitted. The prosecutor objected to the question (before the jury heard the word "acquitted") as irrelevant. Although the defendant argued that the evidence was necessary to rebut the prosecutor's insinuation that William Clark was guilty, the court instructed counsel not to mention the matter again.

Finally, in his closing argument, the prosecutor again imputed guilt to William Clark:

> The other person referred to in this paragraph is the one with the shotgun, William Clark.

> 'Second, that the defendant, with the aid of another person' ... again William Clark ... 'in doing so threatened the immediate use of physical force on or against Charles Timmons.'

On appeal, Clark contends that the trial court erred in: (1) failing to exclude the prosecution's statements and evidence concerning William Clark's involvement in the robbery; and (2) refusing the defendant's evidence of William Clark's acquittal.

■ As to defendant's first point, both parties discuss at great length the ramifications of the doctrine of collateral estoppel apparently to determine whether the issue of the brother's participation in the robbery could be "relitigated" in John Clark's trial. The application of this doctrine to the case before us is tenuous at best in light of the rule that collateral estoppel applies only where the issues arising in the second trial were *necessarily determined in the first.* *State v. Humphrey,* 357 Mo. 824, 210 S.W.2d 1002 (Mo.1948); *State v. Chamineak,* 343 S.W.2d 153 (Mo.1961). Because the jury in William Clark's trial handed down a general verdict of acquittal and no transcript of the proceedings was made, we cannot determine what issues were necessarily determined in that trial. Absent a record so showing, we do not find collateral estoppel applicable here. *See Basista v. Weir,* 340 F.2d 74 (3d Cir.1965).

■ Nevertheless, we find merit in defendant's contention that the prosecutor's statements and questions were improper on more fundamental grounds. A system such as ours which begins with the premise that each individual is innocent of the crime

charged until proven otherwise beyond a reasonable doubt, dictates that every defendant is entitled to be tried on the merits of his own case, without having his guilt prejudged by what has happened to any other defendant charged with the same crime. For that reason, evidence of either the conviction or acquittal of one jointly accused is improper. *State v. Aubuchon,* 381 S.W.2d 807, 815–16 (Mo.1964). *See also State v. Castino,* 264 S.W.2d 372, 375 (Mo. 1954); *State v. Fenton,* 499 S.W.2d 813, 816 (Mo.App.1973).

■ Without doubt then, *even if William Clark had been convicted* of the crime, reference to that fact by the prosecutor would have been error. Here, William Clark was not convicted, and yet the prosecutor implied by his statements and questions that in fact he was. His opening statement that defendant acted in concert with his brother did not necessarily imply *conviction* of William Clark, but it did imply that the question certainly had not been resolved to the contrary. Taken in combination with the prosecutor's reference to William Clark as "the defendant from last week", the implication that William Clark had already been tried and had *not* been acquitted was inescapable.[2] Indirectly, then, the jury was told that which it could not have been told directly, *even if true,* namely, that defendant's brother had been convicted of the robbery. The prosecutor cannot be allowed such liberties with the fundamental rule that a defendant is entitled to be tried on the merits of his own case, and not to be found guilty by association.

This case is distinguishable from *State v. Mullen,* 528 S.W.2d 517 (Mo.App.1975), where the court found no substantial inference that a co-defendant had already been found guilty merely from the admission of the co-defendant's fingerprints. There, the court did not challenge the rule that such an inference may be reversible error, but observed that to be so the inference as to the disposition of the co-defendant's charge must both be clear and of no probative value on the issue of the instant defendant's guilt. Here, not only is the suggestion clear that William Clark had been tried on the charge and not acquitted, but the issue of his guilt is of no probative force to the issue of defendant's.[3]

In light of the long-standing rule that evidence of either a co-defendant's conviction or acquittal is inadmissible, we hold that a strong implication by the prosecutor that a co-defendant has been tried and not acquitted is equally improper, whether or not that statement is true. When that statement is false, such implication must be most strongly condemned. Accordingly, reversal of the conviction is warranted, and the case must be remanded for new trial. We are not convinced by the state's argument that defendant was not prejudiced by the prosecution's statements because he was identified by fourteen witnesses. The disparity in testimony on every point of identification—whether the handgunman had a mustache; whether he was in need of a shave; whether he wore a hat or glasses; whether his hair was light or dark, straight or curly; whether his shirt was long-sleeved or short-sleeved, light in color or dark blue, plaid, or checked—throws considerable doubt on the value of the identifications. Moreover, even if the evidence were overwhelming and consistent, a reversal of this conviction would be necessary to preserve the integrity of our system of justice. As stated in *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935):

2. This implication of conviction distinguishes this case from *State v. Brown,* 360 Mo. 104, 227 S.W.2d 646 (1950), in which the court found no error in the exclusion of evidence of the earlier acquittal of defendant's son for the same charge. That opinion reflects no suggestion by the prosecutor that the son had, in fact, already been tried and found guilty.

3. Unlike the case before us in which any crimes committed by defendant's brother have no relevance to defendant's guilt, the defendant in *Mullen* was charged with felony-murder and was, therefore, liable for a murder committed by any other participant in the underlying felony. Accordingly, fingerprint evidence of a co-participant's involvement in murder was relevant.

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. . . .

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

The Supreme Court's observations apply as well to county prosecutors who, in the eyes of the jury, represent the American system of justice at its most grass-roots level.

Our reversal on this point makes discussion of the defendant's second point, that he should have been allowed to rebut the prosecutor's implication, unnecessary, except to observe that

"where either party introduces part of an act, occurrence, or transaction, * * * the opposing party is entitled to introduce or to inquire into other parts of the whole thereof, in order to explain or rebut adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced by his adversary, or prove his version with reference thereto. * * * This rule has been held to apply * * * even though the evidence was in the first place illegal * * *." 22A C.J.S. Criminal Law § 660(c), pp. 655, 657, 658.

*State v. Odom,* 353 S.W.2d 708, 711 (Mo. 1962).

For the foregoing reasons, the conviction for robbery first degree is reversed, and the cause remanded to the trial court for new trial.

All concur.