**STATE of Missouri, Respondent,**

v.

**Zana Lee FALKNER a/k/a Zana Lee McGee, Appellant.**

**No. WD 34332.**

Missouri Court of Appeals,
Western District.

May 29, 1984.

Harold L. Holiday, Jr., Daniel D. Lane, Holliday & Holliday, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Janet E. Papageorge, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P.J., and CLARK and LOWENSTEIN, JJ.

SOMERVILLE, Presiding Judge.

Defendant stood trial on a three (3) count information charging felonious possession of heroin (Count I),[1] felonious possession of cocaine (Count II),[2] and felonious possession of more than thirty-five (35) grams of marijuana (Count III),[3] in violation of § 195.020, RSMo 1978. All three offenses

---

1. Punishable upon conviction under § 195.200.-1(3), RSMo 1978.

2. Punishable upon conviction under § 195.200.-1(3), RSMo 1978.

3. Punishable upon conviction under § 195.200.-1(1)(b), RSMo 1978.

were charged as having occurred on November 10, 1980, in Jackson County, Missouri.

A motion for acquittal at the close of the evidence was denied. A jury found defendant guilty on all three (3) counts. Following an unavailing motion for new trial, judgment was entered and sentences pronounced, to-wit, ten (10) years imprisonment for possession of heroin, ten (10) years imprisonment for possession of cocaine, and three (3) years and six (6) months imprisonment for possession of more than thirty-five (35) grams of marijuana, said sentences to run concurrently.

Although defendant's brief is not a paradigm, the single point relied on (laced with a variety of far-ranging legal propositions in the argument portion) is perceived as seeking reversal on the principal ground that there was insufficient evidence to support the respective guilty verdicts. Numerous propositions raised in the argument portion of defendant's brief, e.g. the improper admission of certain evidence and instructional error, all ultimately merge in the principal ground relied upon for relief.

From an elemental standpoint, relative to the charges of possession of controlled substances in violation of § 195.020, supra, it was incumbent upon the state to prove that defendant was aware of the presence and character of the particular substances and was intentionally and consciously in possession of them. *State v. Barber*, 635 S.W.2d 342, 343 (Mo.1982). See also: *State v. Burns*, 457 S.W.2d 721, 725 (Mo.1970); *State v. Young*, 427 S.W.2d 510, 513 (Mo.1968); and *State v. Tygart*, 531 S.W.2d 47, 51 (Mo.App.1975).

The evidence relied upon by the state, insofar as germane to the requisite elements, was entirely circumstantial and identical with respect to all three counts of the information. In view of the nature and posture of the evidence, certain well established principles bearing on appellate review are worthy of mention as a prologue to determining whether there was substantial evidence to support the respective guilty verdicts. The facts in evidence and all favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state, and all evidence and inferences to the contrary must be disregarded. *State v. Franco*, 544 S.W.2d 533, 534 (Mo. banc 1976); and *State v. Chase*, 444 S.W.2d 398, 401 (Mo. banc 1969). When the state's case rests upon circumstantial evidence, "the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence." *State v. Ramsey*, 368 S.W.2d 413, 416 (Mo. 1963). See also, *State v. Franco*, supra.

A review of the evidence relied upon by the state, within contemplation of the principles heretofore enunciated, now follows. Prior to November 8, 1980, a three-story residence at 4017 Prospect, Kansas City, Missouri, had been under surveillance by officers of the Kansas City Police Department for suspicion of drug-related activities. During the surveillance, only one person, later identified as Robert "Red" Strong, was observed in the residence, and title to a car parked in front of the residence was traced to Strong. On November 8, 1980, police officers made arrangements with an informant to go to the residence in question and attempt to purchase drugs. Strong responded to informant's knock on the front door of the residence and admitted informant. The only person observed by informant in the residence was Strong. Although no purchase was made by the informant, a search warrant for the residence at 4017 Prospect was obtained by police officers on the basis of information supplied by the informant. The search warrant was executed on November 10, 1980. When the officers entered the residence they immediately encountered defendant and Strong in the living room on the ground floor of the residence. The two were "secured" by officers in the living room and a comprehensive search of the entire premises then ensued. The "search" started on the third floor of the residence, which was described as a "bedroom" area.

No controlled substances were found on the third floor. However, a bottle with a prescription label affixed thereto containing defendant's name and dated October 3, 1979, was found in a purse lying on a bed in the third floor "bedroom" area. Marijuana was found in two purses in a bedroom located in the southwest corner of the second floor of the residence. Marijuana was also found in a brown paper bag sitting on a dresser in a bedroom located in the northwest corner of the second floor of the residence. The combined weight of the marijuana mentioned was in excess of thirty-five (35) grams. A "trace" or "residue" of heroin was found in a "Waring Coffee Mill" (blender) sitting on a counter top in the kitchen located in the northeast corner of the first floor of the residence. A "trace" or "residue" of cocaine was found in a green plastic sifter sitting in a microwave oven on a counter top in the kitchen. The residence was furnished from top to bottom. Defendant was the record owner of the residence. The record on appeal does not disclose the date defendant acquired title to the residence. Utilities in connection therewith were billed in defendant's name and paid by her. On two prior occasions, to-wit, July 19, 1978, and December 8, 1978, defendant was stopped by police officers and given warnings for traffic violations, and on each occasion gave 4017 Prospect, Kansas City, Missouri, as her address. After executing the search warrant, the officers arrested Strong before leaving the residence, but left defendant there to secure the premises. Defendant's arrest followed some nine (9) months later.

■ Where, as in the instant case, there is a total lack of evidence of actual possession by defendant of any controlled substances, constructive possession of the controlled substances with an awareness of their presence and character becomes the pertinent issue. *State v. Polk*, 529 S.W.2d 490, 492–93 (Mo.App.1975). Constructive possession will suffice to sustain a conviction for possession of a controlled substance if facts are present to buttress an inference of defendant's knowledge of the presence of a controlled substance. *State*

*v. West*, 559 S.W.2d 282, 284 (Mo.App. 1977). As observed in *State v. West*, supra, at 284–85, "[t]he legal fiction of constructive possession, however, has its limits. As stated by our supreme court in *State v. Burns*, supra, at 724, '... [p]ossession without knowledge of such possession is not possession in the legal sense of the word....' "

*State v. Wiley*, 522 S.W.2d 281, 292 (Mo. banc 1975), offers crucial guidance at this juncture: "In narcotics or controlled substance cases, the law has developed the policy that a person in *exclusive control* of the premises will be deemed to have possession and control of the substance found on the premises. The basis for this inference has recently been stated in *State v. Funk*, supra, at 360 [490 S.W.2d 354 (Mo. App.1973)], quoting from *People v. Nettles*, 23 Ill.2d 306, 178 N.E.2d 361, 363 (1961). '... Human experience teaches that narcotics are rarely, if ever, found unaccountably in a person's living quarters.' ... Where a person is present on premises where drugs are found *but does not have exclusive use or possession of the premises, it may not be inferred that he had knowledge of the presence of the drugs or had control, so that no submissible case is made. Additional factors are required.* Where the defendant is present on the premises *and if there are additional independent factors showing his knowledge and control*, then that is sufficient to withstand a motion for a directed verdict." (emphasis added) "Exclusive control" is also referred to in terms of "exclusive use or possession" in *State v. Barber*, supra, at 344.

Possession and control of the premises in question is addressed in the temporal context of November 10, 1980, the date the offending substances were found and seized. If defendant had *exclusive* use or possession of the premises at 4017 Prospect on November 10, 1980, then the respective guilty verdicts withstand an attack on grounds of insufficiency of the evidence to support them by virtue of the reasonable inference judicially recognized in *State v.*

*Wiley,* supra, of control and knowledge of the character and presence of proscribed substances found on premises in the *exclusive* use or possession of a person. On the other hand, if defendant did not have *exclusive* use or possession of the premises at 4017 Prospect on November 10, 1980, but shared control with Strong, no inference could be drawn that defendant had knowledge of the presence and character and was intentionally and consciously in possession of the proscribed substances, and it was incumbent upon the state to come forward with evidence of "additional independent factors showing ... [defendant's] knowledge and control." Id. at 292.

The state places great emphasis upon defendant's ownership of the premises at 4017 Prospect as proof of *exclusive* use or possession. This poses a critical question—did proof of defendant's ownership of the premises buttress a reasonable inference that defendant had *exclusive* use and possession of the premises on November 10, 1980? An analogous case, *State v. West,* supra, appears to answer the aforementioned question in the negative. In *West,* the defendant was charged with possession of a controlled substance found in the trunk of an automobile owned by defendant. The only evidence implicating defendant was ownership of the automobile. The court in *West* rejected, as "dangerous", defendant's ownership of the automobile as raising an inference that defendant had knowledge of the presence of a controlled substance in the trunk. In doing so, the court in *West* noted that automobiles were frequently used by persons other than the owners. Relating *West* to the instant case, an inference of *exclusive* use and possession of real property drawn from mere proof of ownership would generate an equally "dangerous" situation. The chilling effect upon legitimate landlord-tenant relations virtually defies comprehension. A landlord, however innocent, could be put in peril to defend against a charge of possession of a controlled substance simply by proof of ownership of premises where a controlled substance was found, thereby triggering the clinching in-

ference of knowledge of the presence and character and intentional and conscious possession of the controlled substance. While the aforementioned, admittedly, may be an extreme example flowing from the position advocated by the state, it nevertheless represents a reality.

The position advocated by the state is subject to the further vice of piling an inference upon an inference—that defendant's ownership of the premises supported an inference that defendant had exclusive use and possession of the premises and exclusive use and possession of the premises supported the further inference that defendant had knowledge of the presence and character and was intentionally and consciously in possession of the controlled substances seized. It is impermissible to pile an inference upon an inference. *State v. Brown,* 542 S.W.2d 789, 792 (Mo.App.1976). Although some doubt has been cast upon piling an inference upon an inference as constituting a rule of evidence per se, by addressing the problem in terms of guarding against "attenuated reasoning" on the part of the jury, *Braun v. Roux Distributing Company,* 312 S.W.2d 758, 764 (Mo. 1958), it would appear that both approaches exemplify a common conviction that an inference piled upon an inference lacks the stature of substantial evidence.

This court is constrained to conclude that the evidence and all reasonable inferences drawn therefrom considered in the light most favorable to the state showed, at best, that defendant and Strong shared control of the premises at 4017 Prospect on November 10, 1980. Assuming that defendant and Strong shared control of the premises on November 10, 1980, the focus of judicial review necessarily shifts to whether there was evidence of any "additional independent factors" showing that defendant had knowledge of the presence and character and was intentionally and consciously in possession of the controlled substances found and seized by the police on November 10, 1980. The record in the instant case is devoid of any evidence, direct or circumstantial, of "additional inde-

pendent factors" of such requisite caliber. The only evidence in this case remotely approaching such proof was defendant's presence in the living room of the premises when the police entered to execute the search warrant and her proximity, in some unknown degree, to the location where the proscribed substances were found. Both lack legal momentum to support the guilty verdicts. Defendant's mere presence on the premises where the proscribed substances were found did not make a submissible case. *State v. Barber*, supra; *State v. McGee*, 473 S.W.2d 686 (Mo.1971); and *State v. Reynolds*, No. 47396, (Mo.App. E.D. April 3, 1984). Likewise, defendant's proximity to the locations where the offending substances were found did not make a submissible case. *State v. McGee*, supra; and *State v. Reynolds*, supra. Moreover, the aforementioned, conjunctively, do not make a submissible case. *State v. Reynolds*, supra.

Whether an accused in a criminal case is to be afforded the panoply of rights and protections ingrained in our criminal justice system, e.g. the presumption of innocence and the heavy burden upon the state to adduce substantial evidence proving guilt beyond a reasonable doubt, does not turn upon assessment of whether there is a strong suspicion of guilt or a strong suspicion of innocence. They clothe the innocent and guilty alike, straight across the board. Were it otherwise, the sustaining integrity of our criminal justice system would be seriously jeopardized. Any perceived benefits from a more relaxed system are far outweighed by the loss of fundamental rights built into our criminal justice system to protect individuals without which a democratic society cannot long endure. Discriminatory restriction of basic safeguards of liberty and freedom is not a sine qua non for coping with changing pressures of society. Historically, necessity has invariably been the cry of those seeking to restrict freedom and liberty. It has a hollow ring.

It appears that the state explored every possible avenue of evidence in presenting its case. Even so, it failed to make a submissible case. Consequently, this court has no course but to reverse the judgment rendered below and order the trial court to enter judgments of acquittal on all three counts of the information. *State v. Barber*, supra, at 345.

Judgment reversed and cause remanded with directions.

All concur.