STATE of Missouri, Respondent,

v.

Daniel L. HALL, Appellant.

STATE of Missouri, Respondent,

v.

Catherine S. HEIMBURG, Appellant.

STATE of Missouri, Respondent,

v.

Dennis D. LECHNER, Appellant.

Nos. WD 35018–WD 35020.

Missouri Court of Appeals, Western District.

Sept. 4, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Oct. 30, 1984.

J. Dan Conklin, Springfield, for appellant.

John Ashcroft, Atty. Gen., Dan J. Crawford, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, C.J., and DIXON and CLARK, JJ.

DIXON, Judge.

These three appeals arising from the same incident and, having a single dispositive issue, have been consolidated for opinion. Defendant Lechner was convicted in a bench trial. Defendants Heimburg and Hall were convicted in a joint trial before a jury.

The defendants assert that the state's evidence fails to support the verdicts of guilt as it fails to prove the knowing possession by the defendants of the marijuana seized. The defendants's claims must be sustained and the verdicts and judgments reversed.

The evidence in all three cases is virtually identical on the dispositive issue. The evidence most favorable to the state as it appears from the almost-identical transcripts follows:

On August 24, 1981, Sheriff L.A. Morlan of Cedar County, Missouri, was informed by other law enforcement authorities that marijuana was being grown on a farm in a wooded area in eastern Cedar County near the Cedar-Polk county line. Morlan and some of his deputies viewed the area from the adjoining farm and saw what they believed to be marijuana. On September 1 a fly-over was conducted by the sheriff's department. The next day Deputy Sheriff C.A. Larew went to the farm and removed a few plants. Field tests determined that the plants were marijuana. Based upon affidavits containing this information, the sheriff obtained a search warrant for the farm, including the house located on the property near the marijuana field.

At about 6:45 a.m., on September 3, 1981, Sheriff Morlan and several deputies served the warrant at the farmhouse, located about 125 yards from M–Highway and about 75–100 yards from the area where the marijuana was growing. When the officers knocked on the front door, defendant Dennis Lechner answered that he was getting dressed. The officers then entered the house and found that Lechner was dressing. Lechner informed the officers that the two other people were asleep in an upstairs bedroom. The officers then went

upstairs and indeed found Hall and Heimburg in the bedroom. None of the defendants were in actual possession of any controlled substance when searched by the officers. The officers observed no attempt by any of the defendants to conceal or destroy any marijuana or other controlled substances.

A search of the house and surrounding area was made. Lechner had been sleeping in the northwest room of the first floor. No marijuana was found in that particular room. Fertilizer and a water pump were seized from an enclosure located in the back porch area of the first floor.

The upstairs contained three rooms. Two heaters, several marijuana plants and a drying screen were found in the southwest upstairs room. The arrangement of the upstairs was such that only by passing through both the bedroom where Hall and Heimburg slept and then through a second room could one enter the southwest room. The marijuana plants were not visible from the bedroom where Hall and Heimburg were sleeping. It was 20 or 25 feet from the bedroom to the location of the drying paraphernalia. An ashtray on a table in their bedroom contained what appeared to be a very small amount of marijuana. However, it was never weighed and was never tested for any chemical determination of its nature as contraband.

Dishes and eating utensils were found in the kitchen along with some canned food stored in the cupboards. Some leftover food was on the kitchen stove. The bedroom Lechner was occupying contained a water bed, dresser, and another small table.

Outside the officers discovered about eight separate "patches" of marijuana plants growing in an area beginning about 75–100 yards from the farmhouse. These patches were visible from neither the house nor the highway. The marijuana "patches" were separated by trees and brush. They were being irrigated by a water system made up of separate hoses running to each "patch" from a main hose attached to a well located near the home.

The homemade irrigation system was not visible from the house. A storage unit containing some plant stems was located near the field. A total of about 8,000 pounds of marijuana plants, stalks and all, were taken from the outside area and, except for a few samples, completely destroyed.

It is only with reference to the location and quantity of the substances found in the house that the evidence in the two trials differs. The trial record in both cases is garbled and uncertain because of a failure to equate the testimony of the witnesses with specific exhibits.

In the bench trial of Lechner, an officer testified that a small wooden box with a small amount of plant material and a plastic bag of plant material were seized. The officer did not seize these materials himself but received them from other officers who had seized them in the house. A "paper sack" of plant material was also obtained by the same means. One of the officers who actually seized the material did not testify; the other officer did. The latter officer identified materials he seized in the upstairs of the house. He did not identify the location or circumstances of the seizure of any of the other materials. The record in the Lechner trial does not reflect the location or circumstances with respect to any of the material seized within the house, except that found in the upstairs southwest bedroom.

In the jury trial of the other two defendants, the record is likewise garbled but is dissimilar. An officer identified the small wooden box as being in the downstairs room. The box was described as "setting on a table" in the "living room." There is nothing to indicate whether it was closed or open. A "paper sack" was identified as originating in the upstairs southwest room, as well as a "plastic trash bag" in the living room.

In sum, the record in Lechner's trial does not disclose any evidence of marijuana on the first floor. The record in the jury trial of the other two defendants discloses the seizure of marijuana from the "living

room" of the first floor. In both trials, evidence was received to demonstrate the presence of marijuana in the southwest upstairs room and a large amount in the fields.

None of the defendants owned the house, nor was there any evidence that the defendants leased the house. An unidentified person, not one of the defendants, paid for the utilities for the house. The house was in substantial disarray. Windows and doors were missing.

Law enforcement officers had not seen any of the defendants on the property prior to the time the warrant was served on September 3, 1981. In addition, neither did the officers know how long any of the defendants had been in the house prior to their arrest. The officers had not looked into the house at any time before the warrant was served.

■ This court has recently stated the principles applicable to a fact situation akin to the instant case. The principles cannot be better stated than they were in that case. *State v. Falkner*, 672 S.W.2d 373 (Mo.App.1984). The following excerpt from that opinion states the law applicable to the instant case:

Where, as in the instant case, there is a total lack of evidence of actual possession by defendant of any controlled substances, constructive possession of the controlled substances with an awareness of their presence and character becomes the pertinent issue. *State v. Polk*, 529 S.W.2d 490, 492–93 (Mo.App.1975). Constructive possession will suffice to sustain a conviction for possession of a controlled substance if facts are present to buttress an inference of defendant's knowledge of the presence of a controlled substance. *State v. West*, 559 S.W.2d 282, 284 (Mo.App.1977). As observed in *State v. West*, supra, at 284–85, "[t]he legal fiction of constructive possession, however, has its limits. As stated by our supreme court in *State v. Burns*, supra, at 724, '... [p]ossession without knowledge of such possession is

not possession in the legal sense of the word....' "

*State v. Wiley*, 522 S.W.2d 281, 292 (Mo. banc 1975), offers crucial guidance at this juncture: "In narcotics or controlled substance cases, the law has developed the policy that a person in *exclusive control* of the premises will be deemed to have possession and control of the substance found on the premises. The basis for this inference has recently been stated in *State v. Funk, supra*, at 360 [490 S.W.2d 354 (Mo.App.1973)], quoting from *People v. Nettles*, 23 Ill.2d 306, 178 N.E.2d 361, 363 (1961). '... Human experience teaches that narcotics are rarely, if ever, found unaccountably in a person's living quarters.' ... Where a person is present on premises where drugs are found *but does not have exclusive use or possession of the premises, it may not be inferred that he had knowledge of the presence of the drugs or had control, so that no submissible case is made. Additional factors are required.* Where the defendant is present on the premises *and if there are additional independent factors showing his knowledge and control,* then that is sufficient to withstand a motion for a directed verdict."

Other cases have recently announced the same principles. *State v. Reynolds*, 669 S.W.2d 582 (Mo.App.1984).

■ The factual situation in the instant cases parallels that of the cited cases. There is at best joint possession of the premises. There is no personal possession of the controlled substances. There is nothing in the evidence to suggest that knowledge of the presence of the substances in the upstairs area can be imputed to anyone, since there is no showing that any of the defendants were ever in that area in which the contraband was open and obvious. There was no evidence that the contraband on the first floor was in plain view of any occupant. The cultivated contraband and the cultivation devices were not in plain view of any occupant of the house.

The evidence wholly fails to show any indicia of control of the premises in any of the defendants. They were not the owners, and they did not have the utilities in their names. There is no evidence as to the length of time that any of the defendants had been occupants of the house, other than the possible inference they had been there overnight because they were asleep. There was evidence someone had been occupying the house, but there is not an iota of evidence that links the defendants or any of them individually to a continued occupation and control of the premises.

In *Falkner* the defendant owned the house and was present. She had asserted by giving the address in traffic violations that it was her residence. The utilities were in her name. The search disclosed 35 grams of marijuana in the house, as well as traces of other narcotics. The facts in the instant case as to control of the premises are even more lacking than in *Falkner*. The instant case conjoins presence of the defendants in a dwelling with the presence in the same dwelling of contraband. Mere presence of the defendants on the premises in the proximity of contraband is insufficient to show knowledgeable possession. *State v. McGee*, 473 S.W.2d 686 (Mo.1971); *State v. Barber*, 635 S.W.2d 342 (Mo.1982).

The judgments in each of the cases are reversed with directions to the trial court to enter judgments of acquittal in each case.

All concur.