**STATE of Missouri, Respondent,**

v.

**Kimberly HALL, Appellant.**

**No. WD 35617.**

Missouri Court of Appeals,
Western District.

Jan. 29, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied April 2, 1985.

Application to Transfer Denied April 30, 1985.

C. Clifford Schwartz, Clayton, for appellant.

Diane Garber and Robert R. Sterner, Fulton, for respondent.

Before KENNEDY, P.J., and DIXON and CLARK, JJ.

KENNEDY, Presiding Judge.

Defendant Kimberly Hall was convicted of acting in concert with her husband in possessing less than 35 grams of marijuana, § 195.020, RSMo Supp.1982, and was sentenced in accordance with the jury verdict to 30 days in jail and a $500 fine, § 195.200.1(1)(a), RSMo Supp.1982.

On the information given by a confidential informant, Lieutenant Ken Bishop of the Callaway County sheriff's office obtained on December 31, 1982 a warrant to search the home of Kimberly and James Hall for marijuana and amphetamines. The next morning Lieutenant Bishop entered the home, found James Hall standing in his bedroom doorway and defendant Kimberly Hall in bed. He directed the couple to dress and to sit in the living room. The officer then searched the home and found in one bedroom a water pipe, and, hidden in the collector bag of a stand-up vacuum cleaner several cellophane bags of marijuana and an aluminum foil packet of hashish. In defendant's bedroom, he found a metric scale near the bed and a cellophane bag of marijuana on the dresser. On an end table in the living room, a cellophane bag of marijuana lay among fruit and nuts in a bowl.

By information, James Lee Hall and Kimberly Hall were charged jointly with acting in concert in possessing more than 35 grams of marijuana. The cases were severed and the husband's case tried first, resulting in a jury verdict of not guilty to the charge of joint possession with his wife of over 35 grams of marijuana. Defendant wife, found guilty by jury verdict of joint possession of less than 35 grams of marijuana, appeals.

## I

Defendant first contends that collateral estoppel should have barred her trial because she and her husband had been charged in the same information with the same offense of joint possession of marijuana but, since the jury in her husband's trial found him not guilty, they "must have necessarily found that the wife was not guilty". Defendant contends that in her trial the information, evidence and charge to the jury were "exactly and mutually the same" as in her husband's trial, and thus, by failing to sustain defendant's motion to dismiss and plea in bar of prosecution, the trial court committed prejudicial error, placing her in jeopardy twice for the same offense. A separate point, that it was error to submit the charge of joint possession with her husband, is based also upon the husband's acquittal in the earlier trial.

The fact that defendant's husband, with whom she was charged with joint possession of marijuana, had in a separate trial been acquitted of a similar charge, i.e. joint possession with defendant of marijuana, based upon the same event and the same evidence, is no bar to defendant's prosecution. That proposition is too clear to require much discussion. Defendant was not a party to the trial of the charge against her husband, and the result of that case has no bearing, in any way, upon the trial of the charge against the defendant. For a good analysis of the subject, see *State v. Swearingin*, 564 S.W.2d 351, 353–55 (Mo.App.1978).

## II

Next, defendant challenges the submissibility of the case because, she contends, there was insufficient evidence to establish her use or control of or dominion over the marijuana found in the house.

Defendant correctly says that the state must prove her knowing and intentional possession of the marijuana. *State v. Barber*, 635 S.W.2d 342, 343 (Mo.1982). While one in exclusive possession of premises may be deemed to be in possession of

illicit drugs found therein, *State v. Wiley,* 522 S.W.2d 281, 292 (Mo. banc 1975), if possession is joint with another person, as was the case here, there must be some additional evidence to link the defendant with the drugs. *Id.*

It is clear that defendant occupied the house in question with her husband. When the police officers entered the house on New Year's morning, 1983, defendant was in bed covered with a sheet. A bag of marijuana was lying on a dresser "located directly next to the bed or practically touching the bed". It would have been "maybe a couple of feet" from the defendant. On the same dresser was an ashtray containing a small amount of marijuana. Also in the same bedroom, on top of a stand or table of some description, was a metric scale with some unidentified vegetable matter on it. The evidence does not show its distance from the bed, but the officer saw it as he entered the bedroom.

The other marijuana, the hashish and the water pipe were found in other rooms in the house.

■ The state made a submissible case against the defendant. The marijuana in the cellophane bag and in the ashtray lying on the dresser within defendant's reach, near the bed where defendant was found when the officers entered the house, added to the fact of defendant's access to the living room and the other "bedroom" (although there was no bed in it) where the other drugs and the water pipe were found is sufficient to establish her actual or constructive and knowing possession of the drugs. *State v. Zimpher,* 552 S.W.2d 345, 349 (Mo.App.1977); *State v. Jackson,* 576 S.W.2d 756 (Mo.App.1979). We have examined each of the cases cited by defendant where joint possession of premises was held not to establish prima facie the possession of drugs found therein, namely, *State v. Barber,* 635 S.W.2d 342 (Mo.1982); *State v. McGee,* 473 S.W.2d 686 (Mo.1971); *State v. Moore,* 659 S.W.2d 252 (Mo.App.1983); *State v. Lowe,* 574 S.W.2d 515 (Mo.App. 1978); *State v. Funk,* 490 S.W.2d 354 (Mo. App.1973). To that list might be added two

recent cases of this court, *State v. Hall,* 680 S.W.2d 179 (Mo.App.1984); *State v. Falkner,* 672 S.W.2d 373 (Mo.App.1984). In each case there was a significant difference from the case we have before us at the present time. There were absent the salient circumstances of defendant's joint residence with her husband for at least one month; the close proximity of marijuana to the bed where defendant was sleeping at the time the officers entered the house; the visibility in the bedroom of the metric scale; and her access to the other areas in the house where the drugs and the drug paraphernalia were located, most in plain view. *State v. Kerfoot,* 675 S.W.2d 658, 662 (Mo.App.1984). Absent from this case is the danger that she was innocent of any knowing and intentional possession of the drugs.

### III

Defendant contends that several motions in limine requested by the prosecutor and granted by the trial court denied defendant her Sixth Amendment right to confront witnesses against her. The prosecutor sought and was granted the following motions: (1) To prevent any reference to the outcome of defendant's husband's trial, (2) to prohibit references to fingerprinting and scientific tests which could have been made but were not, and (3) to prevent reference to the confidential informant and to prohibit cross-examination of the informant's reliability.

■ The court was not in error in its in limine order prohibiting any reference to the outcome of defendant's husband's trial. The fact that he had been acquitted of the charge against him was wholly irrelevant, just as his conviction thereof would have been wholly irrelevant to any issue in defendant's trial. *State v. Clark,* 646 S.W.2d 409 (Mo.App.1983).

■ The state made and the trial court sustained a motion in limine to prohibit references to fingerprinting and scientific tests which could have been made but were not. There is no doubt, as an abstract

proposition, that this ruling was incorrect. If the state could have fingerprinted objects which defendant was charged with possessing, and did not do so, it was perfectly in order for the defendant to show this fact, either by cross-examination of the state's witnesses or by independent evidence. After all, the defendant was charged with possession of marijuana. The marijuana was contained in cellophane bags. As a part of the state's evidence there were introduced a water pipe and a scale, both of which were drug paraphernalia. These objects were found in the residence and in the bedroom which the defendant occupied with her husband. It was incumbent upon the state to show defendant's possession of the marijuana. Her fingerprints on the cellophane bags containing the marijuana or on the drug paraphernalia would have been relevant to show her possession of them; the absence of her fingerprints would also be relevant on the same issue.

Similarly, if there were scientific tests available to the state which might be relevant on the issue of defendant's guilt, the absence of such tests was a relevant inquiry, either on cross-examination or by direct proof.

■ The difficulty we have is that we are unable to see any prejudice to defendant. The defendant, in cross-examining the police officer, brought out that the scale did not have her fingerprints on it, and that the water pipe did not have her fingerprints on it. She brought out also that no fingerprint samples were taken of the cellophane marijuana bags. The trial court did limit defendant's attorney in going into whether fingerprints could be obtained from the bags.

As to other "scientific tests" the defendant did not give the trial court any idea what scientific tests she would have liked to inquire about, and gives us no such idea. Before we will reverse for trial court error, we must be able to determine that defendant suffered prejudice thereby. We are unable to assess any prejudice to defendant on account of the exclusion of evidence unless there is a showing what the evidence would have been if allowed. *See Kansas City v. Johnson,* 679 S.W.2d 328 (Mo.App.1984).

■ Neither was the trial court in error in ordering that there be no reference to the confidential informant or in prohibiting cross-examination of the informant's reliability. The defendant does not tell us how the confidential informant or his credibility is relevant in any way, on any issue. In the testimony before the jury, there was no reference to a confidential informant. The only connection between the confidential informant and this case was that a confidential informant had supplied information upon which the search warrant was based. Such testimony was before the judge on the motion to suppress the evidence seized under the search warrant, but not before the jury. The defendant did not suggest to the trial court, and does not suggest to us, what use she might have made of any evidence with respect to the confidential informant or his credibility. We cannot find error in the court's order, or if we could find that it was erroneous, we cannot find any prejudice to the defendant.

IV

Defendant challenges the validity of the search warrant which, she contends, was invalid because issued without probable cause.

■ Defendant's specific argument under this point is that the affidavit upon which the warrant was based was based on hearsay information from an informant, not information of a reliable (police) informer, and not based on or corroborated by the police officer's own investigation or observation. The affidavits of the two police officers upon which the search warrant had been issued by Judge Augustine were, we believe, sufficient to justify the judge's issuing the search warrant. The "totality of circumstances", *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), presented by the two officers' affidavits were as follows: A confidential informant,

believed by one of the officers to be reliable, had informed the officers that he had seen the sale of amphetamines and marijuana in the James Hall residence on two occasions during the month of December 1982, and that there were more amphetamines and marijuana in the Hall residence at the time the sales were made. The informant had in the past provided information which, according to one of the affidavits, had proven to be reliable. The officers knew that there was a James Hall residence at Five Oak Avenue in Fulton, Missouri, where the informant stated that the drug sales had taken place. The officers knew that James Hall had been "associated with narcotics", and knew of his arrest for "felony possession of marijuana" within the preceding year.

We are unable to say that such affidavits presented to Judge Augustine did not establish a "fair probability" that contraband would be found in the James Hall residence. *Illinois v. Gates,* 103 S.Ct. at 2332. *See also State v. Horsey,* 676 S.W.2d 847 (Mo.App.1984). And it was only that that had to be shown to Judge Augustine as a basis for the search warrant. It was not necessary that they establish the presence of the contraband in the place to be searched either prima facie, or by a preponderance of the evidence, or beyond a reasonable doubt. *State v. Rohrer,* 589 S.W.2d 121, 122 (Mo.App.1979), *cert. denied,* 445 U.S. 916, 100 S.Ct. 1277, 63 L.Ed.2d 600 (1980).

Under the totality of the circumstances, we find that Judge Augustine had a " 'substantial basis for ... conclud[ing]' that probable cause existed," *Illinois v. Gates,* 103 S.Ct. at 2332 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). The warrant was a valid one. The point is denied.

## V

Lastly, defendant claims that the admission into evidence over objection of a water pipe, scale and hashish were irrelevant in her trial for marijuana possession. The hashish in particular "allowed the jury to consider evidence of more serious crimes not charged."

The evidence of the hashish and of the drug paraphernalia was relevant to prove defendant's knowledge and intent. In order for the state to make a case against defendant, it was necessary to prove her knowledge of the character of the vegetable material shown to be marijuana, and to show that her possession was intentional and knowing. *State v. Barber, supra,* 635 S.W.2d at 343 (Mo.1982). The presence of the hashish and the drug paraphernalia was a circumstance tending to show that knowledge and intent. *State v. Williams,* 539 S.W.2d 530, 534–35 (Mo.App. 1976). The fact that their presence has also proved other crimes of defendant is no impediment to its introduction in this case, so long as it was relevant to prove an issue in the present case. *Id.* 539 S.W.2d at 533–35. The point is denied.

The judgment is affirmed.

CLARK, J., concurs and files concurring opinion.

DIXON, J., concurs and concurs in concurring opinion by CLARK, J.

CLARK, Judge, concurring.

The result reached in this case appears, at first blush, to be illogical and unfair. Appellant and her husband were charged in a single information with acting in concert to possess jointly a quantity of marijuana found in their dwelling but not on the person of either. The husband was tried first and acquitted. That result was necessarily based on a finding by the jury that appellant did not possess the marijuana because, under the joint possession charge, her possession was sufficient, if proved, to convict the husband. But the trial of the wife resulted in conviction, a verdict which is inconsistent and incompatible with the result of the previous case in its factual underpinning. The purpose of this concurring opinion is to demonstrate why this result is sound and acceptable.

Appellant's argument that acquittal of her husband in the severed trial of her case precludes prosecution of her relies on the concept of collateral estoppel. That doctrine bars a suitor from relitigating a proposition already decided as an element of a final judgment. Here, the ultimate fact issue in the cases of appellant and her husband was whether either, acting in concert, possessed marijuana. The verdict acquitting the husband is compatible only with a finding by the jury that marijuana was not possessed by either appellant or her husband. Appellant argues here that the state, as a party to prosecution of the husband's case, is precluded by collateral estoppel from relitigating the same fact question which has already been decided in the previous trial. Cited, among other cases, is *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

It is first appropriate to note that the claim made here by appellant is not based on double jeopardy or, so far as can be perceived, upon any constitutional guarantees. While double jeopardy does include the component of collateral estoppel, the Fifth Amendment protection is limited in application to reprosecution of the same individual. This case is therefore distinguishable from *Ashe v. Swenson, supra,* where the fact issue was the identity of Ashe as one of the persons who robbed a group of individuals. When the state failed in the first trial to prove it was Ashe who robbed one of the victims, it was precluded from retrying Ashe on charges of robbing the others under the doctrine of collateral estoppel as a component of double jeopardy. Identity of offenses and of the individual are essential to the defense of double jeopardy.

Collateral estoppel is, in many respects, a broader doctrine than double jeopardy. It focuses on issues in terms of ultimate facts and thus may be applicable even though the former and later proceedings are not based on the same offense. In contrast to double jeopardy, however, collateral estoppel does not necessarily bar all prosecutions, only the relitigation of issues determined by the former verdict and judgment.

*Annot.,* 9 A.L.R.3rd 203, 245 (1966). Appellant's advocacy of collateral estoppel conforms here to that aspect of the doctrine because she makes no claim that acquittal of her husband on that circumstance alone exonerates her, only that the state may not again attempt to prove that which a prior judgment has denied, her possession of marijuana.

The principal difficulty with the availability of collateral estoppel to appellant, appealing as the result may be in terms of fairness and consistency, is the absence of mutuality. Quite apparently, appellant was under no handicap in her defense because of the prior trial of her husband and, had the state been successful in that prosecution, the result would have been of no aid in establishing any element of the case against appellant. Thus, appellant seeks unilateral application of the collateral estoppel concept.

Non-mutual collateral estoppel is a doctrine which has received wide acceptance following its original introduction in *Bernhard v. Bank of America National Trust & Savings Ass'n,* 19 Cal.2d 807, 122 P.2d 892 (1942). It was adopted in Missouri in *Oates v. Safeco Insurance Co. of America,* 583 S.W.2d 713 (Mo. banc 1979). These, however, were civil cases. The same general acceptance in criminal cases has not followed.

California does appear to find the same rationale supportive of non-mutual collateral estoppel in criminal and civil cases and to make no distinction where a criminal prosecution is involved. *People v. Taylor,* 12 Cal.3d 686, 527 P.2d 622, 117 Cal.Rptr. 70 (1974) set out a three part test to apply in determining whether collateral estoppel was applicable to bar litigation of an issue in a criminal trial. The elements are (a) common identity of the issue in the present and in a prior trial, (b) a final judgment on the merits in the prior trial, and (c) the party against whom the estoppel is asserted was a party in the prior trial. Mutuality is not a requirement. This rule was applied to bar prosecution of an indicted co-

conspirator in *People v. Superior Court,* 44 Cal.App.3d 494, 118 Cal.Rptr. 702 (1975) where a prior trial had resulted in acquittal of the two other co-conspirators.

The only recent Missouri cases which discuss the subject are *State v. Clark,* 646 S.W.2d 409 (Mo.App.1983) and *State v. Swearingin,* 564 S.W.2d 351 (Mo.App. 1978). Neither provides an analysis fully applicable to appellant's contention and the facts of this case. In *Clark,* the question of collateral estoppel could not be explored because no identity of an issue of ultimate fact common to both trials was ascertainable. In *Swearingin,* the general statement is made that collateral estoppel is unavailable in a criminal case except as to defendants who were parties to the prior adjudication, but the opinion does not offer a satisfying analysis of why a doctrine generally accepted in the civil field should be rejected out of hand in criminal cases. On the other hand, no reported Missouri decision has suggested any disposition by courts here to approve non-mutual collateral estoppel as a defensive tool in criminal prosecutions.

The arguments which support rejection of collateral estoppel as applicable in criminal cases where the estoppel is unilaterally imposed against the state were enumerated in *Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). First, the state often does not have the full and fair opportunity to litigate the fact issue raised in the estoppel claim because of procedures distinctive to criminal cases. Discovery rights are limited by court rules and constitutional privileges, there is no entitlement of the state to a directed verdict or judgment notwithstanding the verdict, a new trial may not be had because a verdict of acquittal is against the weight of the evidence, and the state has no right of appellate review after a judgment of acquittal.

Secondly, the state may be prevented from the use of inculpatory evidence by concepts peculiar to criminal law, such as the exclusionary rule, and, as a consequence, the first defendant may be acquitted. As to a second defendant, however, the evidence may be admissible and supportive of conviction.

Finally, there is an overriding public interest in the enforcement of the criminal law which justifies the prospect of repetitive litigation and the attendant burden on court dockets. Again, it is to be emphasized that the issue in collateral estoppel cases considered here is not one of individual rights present in double jeopardy situations, but a restriction on the state concerning successive opportunities to prove similar cases against different individuals.

The conditions which distinguish criminal cases and the policy considerations involved are, in the writer's view, adequate to justify rejection of non-mutual collateral estoppel as a defense to prosecution of appellant here and to like defendants similarly situated. I therefore concur in the opinion delivered by Kennedy, J.