**STATE of Missouri, Respondent,**

v.

**Sally MITCHELL, Appellant.**

**No. 58550.**

Missouri Court of Appeals,
Eastern District,
Northern Division.

June 25, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 23, 1991.

Charles R. Willis, St. Louis, for appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals a jury conviction for possession of more than 35 grams of marijuana, a class C felony for which defendant was sentenced to three years' imprisonment. We affirm.

We view the evidence in a light most favorable to the verdict. Defendant was the sole owner of a house at 166 West Court Street in Kahoka, Missouri. Trooper Brett Johnson, of the Missouri State Highway Patrol, received a tip from a confidential informant that plants from a marijuana patch under surveillance had been harvested by Sam Mitchell, defendant's brother, and taken to defendant's house, where the brother was then residing.

Acting pursuant to a search warrant, Trooper Johnson arrived at defendant's house with Deputy Sheriff Randy Ewart on the evening of September 28, 1989. Although the front door was closed, both men testified they detected the odor of burning marijuana from the front porch of the house. When defendant answered Deputy Ewart's knock at her front door, he asked her to step outside. Defendant complied. Deputy Ewart explained they were there to search her house, and went inside to determine if any other individuals were present.

As he entered the house, Deputy Ewart saw Sam Mitchell coming from the kitchen. Ewart requested that Sam Mitchell go to the front porch. Ewart continued to

search the house to make sure no one else was present. He then returned to the front porch, read the search warrant to defendant and her brother, and advised them of their *Miranda* rights.

The officers seized 33 items from defendant's house, consisting mostly of marijuana plants, leaves and seeds. Marijuana was discovered in rooms of all four floors of the house, from the basement to the attic. Marijuana plants were drying in the attic with the aid of an electric fan and a heater. Plastic trash bags containing marijuana were located throughout the house, including on the staircase. The officers seized a total of 5,813.76 grams of marijuana from defendant's house.

Defendant testified, and called several witnesses in her defense. She contended she did not possess, or even detect, any marijuana in her house. The jury found defendant guilty on Count I, possession of more than 35 grams of marijuana, but remained deadlocked as to the punishment on that count. The jury also could not agree on a verdict for Count II, which was for possession of more than 5 grams of marijuana with intent to distribute.

■ In her first point, defendant alleges the police officer did not execute a proper return of the search warrant in compliance with § 542.276.9, RSMo 1986. Specifically, she argues the return of the search warrant "failed to declare from whose possession the marijuana seized in this case was taken."

Section 542.276.9 states:

After execution of the search warrant, the warrant with a return thereon, signed by the officer making the search, shall be delivered to the judge who issued the warrant. The return shall show the date and manner of execution, what was seized, and the name of the possessor and of the owner, when he is not the same person, *if known....* (Emphasis supplied.)

The return on the search warrant at issue stated:

... that the owner of said property is Sam Mitchell/Sally Mitchell (that there was no person present from whose possession said property was taken;) that I delivered to said possessor and/or owner a Receipt for the property taken, together with a copy of this warrant; ...

The return states defendant was one of the owners of the property searched, and that no one physically possessed the items seized at the time of the search. Both Sam and Sally Mitchell waited on the front porch while officers searched the house. Therefore, the possessor was not "known," and not required to be listed, as stated in the statute. Further, defendant was not prejudiced by any failure to comply with the statute. The return to a search warrant is a ministerial act, and even the total failure to file a return does not affect the validity of the search warrant itself. *State v. Macke,* 594 S.W.2d 300, 309 [17, 18] (Mo.App.1980).

■ In her second point on appeal, defendant argues the trial court abused its discretion in denying her motion to disclose the confidential informant. Although a hearing was held on her motion, defendant did not file a complete transcript of that hearing with this court, or serve the complete transcript of the hearing on the State. Defendant's legal file contains the cross-examination of Trooper Johnson concerning his contact with the confidential informant, but fails to include the direct or re-direct examination of Trooper Johnson, or the testimony of any other witnesses who may have testified. The burden of preparing and filing the record on appeal lies with the appellant. *State v. Cleveland,* 627 S.W.2d 600, 601[2] (Mo.App.1982).

■ In any event, defendant has failed to show an abuse of the trial court's discretion in refusing to require the State to disclose the confidential informant. *See State v. Amrine,* 741 S.W.2d 665, 671 [11] (Mo.banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988). The confidential informant had no personal knowledge of whether or not defendant was aware of the marijuana in her house, and thus could not testify to show that defendant had no opportunity to know the marijuana was present in her home. *See*

*State v. Payne,* 660 S.W.2d 24, 25 [2, 3] (Mo.App.1983).

In her third point, defendant asserts the trial court erred by "permitting the State to cure a defect in the application for the search warrant, or orally impeaching the acknowledgement therein, at trial." Defendant objects to Trooper Johnson's testimony that he prepared the affidavit supporting the application for the search warrant on the evening of September 25, 1989, although the application and affidavit were presented to the court on September 26, 1989. Defendant argues that Trooper Johnson's testimony "prejudicially diminished defendant's evidence ... and robbed her of the only notice she had that enabled preparation of any defense."

Because the record shows Johnson's testimony was consistent with the acknowledgement on the warrant, there was no violation of § 542.276, RSMo 1986. Under this statute, the State is required to state the time and date of the making of the application for the warrant. The application was made on September 26, 1989, as the acknowledgement stated. Point denied.

■ Defendant next claims the trial court erred in sustaining the State's objection to defendant's attempted cross-examination of Trooper Johnson concerning statements made by Sam Mitchell upon his arrest. She asserts the statements did not constitute hearsay because they provided "a perfectly good explanation for [defendant's] conduct or lack of it, regarding the contraband located at Court Street." She argues that these statements would have indicated her lack of knowledge of the presence of marijuana. The trial court did not err. First, under defendant's own argument, Sam Mitchell's statements do not explain defendant's conduct, but rather attempt to disprove her awareness of the marijuana. Further, when the trial court sustained the State's objection, defendant had the burden of showing the materiality and relevance of this evidence by way of an offer of proof. *State v. Clay,* 763 S.W.2d 265, 270 [6] (Mo.App.1988). No such offer of proof was made. Point denied.

Defendant next contends the trial court should have granted her motion for acquittal at the close of the State's case for lack of substantial evidence proving her possession of more than 35 grams of marijuana. She alternatively argues that the evidence was only sufficient to convict her of misdemeanor possession.

■ To sustain a conviction for possession of a controlled substance, the State must prove that the defendant was aware of the presence and character of the particular substances and was intentionally and consciously in possession of them. *State v. Falkner,* 672 S.W.2d 373, 374[1] (Mo.App. 1984). To meet this burden, conscious, intentional possession, either actual or constructive, must be established. *State v. Barber,* 635 S.W.2d 342, 343[2–4] (Mo. 1982). If actual possession has not been shown, as in the instant case, constructive possession will suffice when other facts buttress an inference of defendant's knowledge of the presence of a controlled substance. *Id.* Exclusive control of the premises on which controlled substances are found raises an inference of possession and control of those substances. *Id.* However, where a person is present on premises where drugs are found but does not have exclusive use or possession of the premises, it may not be inferred that she had knowledge of the presence of the drugs or had control, so that additional factors showing knowledge and control are necessary. *Falkner,* 672 S.W.2d at 375[4], quoting from *State v. Funk,* 490 S.W.2d 354, 360 (Mo.App.1973).

■ The title to the house was in defendant's name, and she had free access to all areas of the house. However, Sam Mitchell sometimes stayed there and had his own key to the house. Defendant's ownership of the house is not sufficient to show exclusive use or possession of the premises. *Falkner,* 672 S.W.2d at 376[4]. We must conclude that defendant and Sam Mitchell shared control of the premises, thus necessitating evidence of additional, independent factors showing defendant's knowledge of and control over the drugs.

Such additional, independent factors exist in this case. The police seized over 5,813 grams of marijuana from defendant's house. The marijuana was present in the attic; throughout the kitchen, including inside the cabinets, freezer and microwave; in the basement; and in plastic trash bags on the stairwells. Small amounts of marijuana leaves were found on the floor throughout the house. The remains of a marijuana cigarette were found in an ashtray in the kitchen, which is where the birthday cake defendant went to the house to pick up was found. Defendant admitted to ownership of a small bag of marijuana found in the bathroom on the second floor. Defendant also admitted knowledge of the marijuana in the kitchen cabinet. Further connecting defendant with knowledge and control of the marijuana is the strong odor of burning marijuana detected by the police officers as they approached the house.

The large quantity of marijuana discovered on the premises, defendant's ownership of, and free access to the premises, and her admission of knowledge of the presence of some of the illegal substance all combine to raise a sufficient inference of defendant's knowledge and control of the marijuana. *See State v. Mischanko*, 743 S.W.2d 867 (Mo.App.1987). Point denied.

■ In her sixth point, defendant argues the trial court erred by repetitively charging the jury with the definition of "possessed." Defendant contends the definition was inflammatory, overbroad and prejudicial, in that it permitted the jury to infer, solely by reason of defendant's presence in her house, that she possessed marijuana.

The term "possessed" was an element of, and defined in, each of the verdict-directing instructions. At the date of defendant's trial, no single definition for the word "possessed" or its forms had been approved in MAI–CR 3d 333.00. *State v. Gulley*, 776 S.W.2d 492, 494[6–7] (Mo.App.1989). Defendant does not dispute that the instructions accurately followed the basic definitions outlined in *State v. Norris*, 460 S.W.2d 672, 677 (Mo.banc 1970) and *State v. Sledge*, 471 S.W.2d 256, 260 (Mo.1971). Defendant cites no authority as to why the inclusion of the definition of an element in each of the verdict-directing instructions was error. Point denied.

Finally, defendant contends the trial court coerced the jury's verdict on Count I, possession of more than 35 grams of marijuana. In affirming this point, we are mindful that the jury was unable to agree upon punishment for this offense, and that the jury continued to be deadlocked as to Count II, possession of marijuana with intent to distribute.

Specifically, defendant asserts the trial court coerced the verdict, "compelling deliberation beyond the jury's announcement that they were deadlocked" by "inundating them with 50 containers of aromatic marijuana," and by "withholding from the jury Exhibit 39, and refusing to bifurcate its inquiry of the jury as to the state of their deliberations under Count I."

The jury retired at 2:40 p.m. At approximately 6 p.m., the trial judge and the lawyers met to consider the jury's request to view Exhibits 9 and 19, containers seized from defendant's home which contained marijuana. The jury also requested to know the weight of the items. The State presented no objection, but defense counsel proposed sending Exhibit 38, a lab report which contained the weight of all the items seized or no exhibits at all. Defense counsel then changed his mind, and asserted that no exhibits should be sent to the jury. The court agreed and responded to the jury it could not comply with the request.

At approximately 6:12 p.m., the court received a note from the jury asking the weight of the items listed in the first request. The court responded to the jury in the same fashion. At 8:20 p.m., the court received notice from the jury that they could not agree on a verdict on Counts I or II. The court proposed giving MAI–CR 3d 312.10, the "Hammer" instruction, and sending all the exhibits to the jury. Defense counsel objected, but stated "I did not intend to embrace in my objection the giving of the Hammer, this particular case. My objection relates, of course, to the admitting of all of these exhibits...." The court overruled the objection, sent the exhibits to the jury, excluding a video tape,

and gave the "Hammer" instruction to the jury. At 9:35 p.m., defense counsel again objected and moved for a mistrial, which motion he renewed at 10:04 p.m. Defendant's motion was overruled.

At 10:47 p.m., the court made a written inquiry to the jury as to whether they had reached a consensus as to defendant's guilt or innocence on Count I or Count II. The jury's written reply stated they had unanimously found defendant guilty on Count I, but could not reach a unanimous verdict on Count II. The jury further wrote they had not agreed upon the punishment and would not reach agreement if given more time. At 12:02 a.m. the jury returned a verdict of guilty on Count I, but remained deadlocked as to the appropriate punishment on Count I and the determination of guilt or innocence on Count II. The jury was polled, and under questioning each juror stated that he or she concurred in the verdict.

Since the trial court observed the incidents giving rise to the request for a mistrial, it was in a better position than this court to evaluate the prejudicial effect, if any, that the giving of the exhibits and giving of "Hammer" instruction had on the jury. *State v. Anderson*, 698 S.W.2d 849, 852–853 [7] (Mo.banc 1985). The decision to allow exhibits to be taken to the jury room is a matter of discretion for the trial judge. *State v. Luckett*, 770 S.W.2d 399, 404 [7] (Mo.App.1989). By sending all the exhibits, the court placed no particular importance on any one exhibit presented by either the prosecution or the defense.

We also find the verdict of the jury was not coerced. *See State v. Gott*, 784 S.W.2d 338, 341 [2] (Mo.App.1990). In the absence of any facts that any juror capitulated to a verdict in which they did not believe, there was no error. *State v. Marsh*, 792 S.W.2d 687, 692 [4] (Mo.App. 1990).

Judgment affirmed.

REINHARD, P.J., and AHRENS, J., concur.