STATE of Missouri,
Plaintiff-Respondent,

v.

Michael PHILLIPS,
Defendant-Appellant.

No. 50639.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 23, 1986.

Motion for Rehearing and/or Transfer
Denied Jan. 22, 1987.

Application to Transfer Denied
Feb. 17, 1987.

Henry Robertson, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Colley Frissel-Durley, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRANDALL, Judge.

Defendant, Michael Phillips, appeals from his convictions, after a jury trial, of robbery first degree, § 569.020 RSMo (1978), assault first degree, § 565.050 RSMo (1978), and armed criminal action, § 571.015 RSMo (1978). He was sentenced as a persistent offender to consecutive terms of imprisonment of 30 years, life, and 30 years, respectively.[1] We affirm.

---

1. These sentences were consecutive to a life sentence for murder in the first degree, which defendant received after a separate trial for the related offense of the murder of Travis Walker. That conviction was affirmed on direct appeal. *State v. Phillips,* 718 S.W.2d 538 (Mo.App.1986).

Defendant does not challenge the sufficiency of the evidence. Viewed in the light most favorable to the verdict, the evidence showed that, on November 20, 1983, DeAnn Keys was living in an apartment with Travis Walker in St. Louis County. She knew defendant and John Lee, who both played on a softball team with Walker. At approximately two o'clock in the morning, defendant telephoned the apartment, ostensibly seeking assistance because of a flat tire on his car. After Walker went outside on the porch to wait for Phillips, the telephone rang a second time. When Keys answered, the caller identified himself as a neighbor who wanted to speak with Walker. Keys went outside to get Walker. When Walker answered, the phone was dead. Keys then went back to bed.

Shortly thereafter, she heard Walker, defendant, and Lee in the living room. Defendant came into the bedroom, carrying a pistol, and told her to return with him to the living room. There, she and Walker were forced to lie face down, side by side, on the floor. Lee stood over Walker, with his pistol, while defendant ransacked the apartment. Defendant and Lee repeatedly demanded to know the whereabouts of jewelry. Defendant took Walker's watch and some of Keys's jewelry. As defendant and Lee were leaving, Keys heard and felt a gunshot and then lost consciousness. When she came to, Keys was bleeding heavily from four gunshot wounds to her head. Walker was lying dead beside her as a result of four bullet wounds to his head.[2]

After trying to seek help from a neighbor, Keys returned to the apartment and wrote the names "John Lee" and "Michael Philips [sic]" twice on an envelope. When the police arrived, she was unable to speak because of her wounds. She indicated, however, that the individuals whose names were on the envelope were responsible for killing Walker and attempting to kill her. Thereafter, she identified photographs of both defendant and Lee. She identified defendant at trial.

In his first point, defendant claims the trial court erred in overruling his objection to a police detective's testimony regarding a photographic lineup. During direct examination of Detective Tim Nisbet, the following discourse ensued:

[Prosecutor]: Did you obtain a photograph of a Michael Phillips?

[Detective]: Yes, sir, I did.

\*    \*    \*    \*    \*    \*

[Prosecutor]: And what did you do with these photographs, Detective Nisbet?

[Detective]: I compiled a photograph line-up.

[Prosecutor]: And when you say a photograph line-up, would you describe to the jurors what you mean?

[Detective]: People of similar appearance that I could find *out of our file*. Approximately 54—(emphasis added).

Defense counsel objected to this testimony and asked for a mistrial on the basis that the detective's testimony inferred that defendant had a prior criminal record. The trial court reasoned:

[Court]: My impression of his testimony is that all he's saying is that he got the other photographs and not the defendant's photograph out of his file and I don't believe that there has been anything in his testimony thus far to indicate that he extracted the defendant's photograph from his file.

The court then denied defendant's motion for a mistrial and, by implication, overruled his objection.

█ Mug shots themselves are neutral and do not constitute evidence of prior criminal activity. *State v. Walker*, 616 S.W.2d 89, 94 (Mo.App.1981); *State v. Hemphill*, 699 S.W.2d 83, 85 (Mo.App. 1985). It is the testimony of the witness pertaining to the mug shots which has the potential for tainting the record.

---

**2.** Defendant's co-defendant, Emitt Foster, a/k/a John Lee, was convicted of the murder of Travis Walker. Foster's death sentence was affirmed on direct appeal. *State v. Foster*, 700 S.W.2d 440 (Mo. banc 1985).

*State v. Quinn,* 693 S.W.2d 198 (Mo.App. 1985), relied on by defendant, is distinguishable on its facts from the present situation. In *Quinn,* the police officer testified that the "department photographs" in his photo display came from his "robbery books" and "crime books." Obviously, that was a direct reference to defendant's prior criminal record.

■ Here, there is not even an indirect reference to defendant's prior record. The detective merely stated that his photographic lineup was comprised of defendant's photograph and photographs of persons of "similar appearance" that came out of "our," presumably the department's, file. The detective did not say that defendant's photograph also came out of that file. At most, there is an unfavorable reference to the people in the photographic lineup and not an unfavorable reference to defendant. Defendant's first point is denied.

We have reviewed defendant's second point which claims the trial court's erred in admitting into evidence Keys's testimony about the second telephone call from a person who identified himself as a neighbor. An extended opinion on that point would have no jurisprudential value. It is therefore denied pursuant to Rule 30.25(b).

Defendant's third point charges that the trial court erred in sentencing him to life imprisonment on the assault first degree conviction because that sentence exceeds the maximum for a class B felony. He alleges that he was charged with a class A felony but was convicted of only a class B felony, because the verdict directing instruction [3] omitted a necessary element to make assault first degree a class A felony, i.e., the use of a deadly weapon. Defendant concedes that this point is not properly preserved for appellate review. He argues that it constitutes plain error. Rule 30.20.

Here, the instruction submitted to the jury required the jury to find that the defendant or his co-defendant "attempted to kill or cause serious physical injury to Deann Keys by shooting her...." The instruction, as given, tracked the approved pattern instruction for assault in the first degree, MAI–CR2d 19.02, with the exception that it omitted the final paragraphs of the approved instruction. The last paragraph of that instruction refers specifically to a "deadly weapon" and to punishment as a class A felony.[4] In the present case, that paragraph apparently was deleted from the verdict directing instruction because the jury was not required to assess punishment for defendant, who was to be sentenced as a persistent offender. We note that, even in cases in which the defendant is a persistent offender, it might be advisable to in-

---

**3.** The verdict directing instruction read as follows:

INSTRUCTION NO. 11

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with him with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about November 20, 1983, in the County of St. Louis, State of Missouri, the defendant or Emitt Foster attempted to kill or cause serious physical injury to Deann [sic] Keys by shooting her,

then you are instructed that the offense of assault in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Second, that with the purpose of promoting or furthering the commission of assault in the

first degree, the defendant acted together with or aided Emitt Foster in committing that offense,

then you will find the defendant guilty under Count II of assault in the first degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the propositions submitted in this instruction, you must find the defendant not guilty of that offense.

**4.** The omitted portion of MAI–CR 19.02 reads as follows:

(But if you further find and believe from the evidence beyond a reasonable doubt that the defendant committed such assault by means of a (deadly weapon) (dangerous instrument), then you will assess and declare the punishment at:

1. Life imprisonment, or
2. Imprisonment for a term of years fixed by you, but not less than ten years and not to exceed thirty years).

clude any portion of the last paragraph which does not refer to setting punishment. We need not, however, reach that issue in this appeal.

 In the present case, we have reviewed the record and find no manifest injustice or miscarriage of justice. Rule 30.20. The instruction, as given, required the jury to find, *inter alia,* that the victim was shot. There was undisputed evidence to corroborate that fact. It is axiomatic that a deadly weapon is needed to shoot someone. Defendant's third point is denied.

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.