STATE of Missouri, Respondent,

v.

Jeffrey BLANEY, Appellant.

Jeffrey BLANEY, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 56128 & 57812.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 4, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 9, 1991.

Application to Transfer Denied Feb. 7, 1991.

Dorothy Mae Hirzy, David C. Hemingway, Marc B. Fried, St. Louis, for appellant.

William L. Webster, Atty. Gen., M. Melissa Manda, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Judge.

Appellant, Jeffrey Blaney, appeals from his conviction of attempted burglary in the second degree and the denial of his Rule 29.15 motion for ineffective assistance of counsel.

About noon on June 1, 1987, Mrs. Gilmore, while working in her backyard, noticed a young man, later identified as appellant, between the outside screen door and inside door of the house of her neighbor, James H. Smith, who was away for the weekend. Shortly thereafter she saw appellant sitting on the Smith's back stairs and then leave on foot via the driveway and street. Some fifteen minutes later, while she was inside her house, barking dogs drew her attention outside. She saw appellant "throwing" his body against the door about three times. She went outside, and appellant approached her. When he was within five feet, she asked him what he wanted. He responded that he was looking for Joe Gilmore, Mrs. Gilmore's son, and that he was Nick Votino. She replied that he did not look like Nick Votino, who is another neighbor of the Smith's. Appellant again left as he had previously. When James Smith returned home later that day, he noticed that the aluminum screen door, which was locked when he left, had been bent and pried open, and the wooden door had cracks.

Mrs. Gilmore called the police and provided a description of the man she saw. Two days later, on June 3, 1987, she identified appellant from photographs. A second neighbor also testified that she saw appellant in the Smith's driveway two times. Both witnesses identified appellant in the courtroom.

James Smith had purchased his house from the Blaney family about ten years before the incident. Both neighbors remembered appellant as a child of about twelve when the family moved away but did not recognize him as a grown man.

On December 23, 1987, appellant was indicted on three felony counts, including the incident at issue: attempted burglary in the first degree, burglary in the second degree, and stealing $150.00 or more. Count I was amended to attempted burglary in the second degree. The court adjudged appellant a prior and persistent offender. After a trial on July 20 and 21, 1988, a jury found appellant not guilty on Counts II and III but failed to reach a unanimous verdict on Count I. On retrial December 12 and 13, 1988, a jury convicted appellant on Count I. He was sentenced to

ten years imprisonment as a persistent offender.

On appeal appellant contends that the trial court erred when it failed to direct a verdict at the close of the State's case, because the State failed to establish all the elements of attempted burglary in the second degree.

▮▮▮ To be guilty of attempt, the accused must have the purpose of committing some offense and have taken a substantial step towards its commission. § 564.011.1 RSMo.1986; *State v. Walker*, 743 S.W.2d 99, 102 (Mo.App.1988). This court identified four elements the State must prove to make a submissible case of attempted burglary second degree: 1) an intent to commit the crime of burglary; 2) an overt act towards its commission; 3) failure of defendant to consummate the crime; and 4) the apparent possibility of its commission. *State v. Hardy*, 735 S.W.2d 153, 154 (Mo.App.1987); *State v. Olds*, 603 S.W.2d 501, 508 (Mo. banc 1980). In reviewing the sufficiency of the evidence to make a submissible case, the appellate court must review all the facts and reasonable inferences to be drawn from those facts in a light most favorable to the State. *State v. Brown*, 744 S.W.2d 809, 810 (Mo. banc 1988).

▮▮▮ The basis of appellant's challenge to the submissiblity of the State's case is his contention the State failed to prove an intent to steal. The cornerstone of appellant's argument is the failure of the State to offer any evidence that the house contained anything of value. He argues that the inference of intent to steal which flows from the unlawful entry in to a building containing things of value, *State v. Grayson*, 668 S.W.2d 153, 155 (Mo.App.1984), may not be predicated upon the inference that an inhabited residence contains things of value. *State v. McBurnett*, 694 S.W.2d 769, 773 (Mo.App.1985). This, he argues, constitutes "inference stacking" and violates the rule that a conviction may not be based on an inference which is dependent not upon a proven fact but merely upon another inference. *State v. Ring*, 346 Mo. 290, 141 S.W.2d 57, 64–5 (banc 1940); *State v. Brown*, 542 S.W.2d 789, 792 (Mo.App. 1976). The hoary proscription against piling an inference upon an inference is predicated upon the concept that, in the absence of proven facts from which it logically follows, an inference lacks the stature of substantial evidence. *State v. Falkner*, 672 S.W.2d 373, 376 (Mo.App.1984). Inference stacking has been described as a form of "attenuated reasoning", *State v. Nobles*, 699 S.W.2d 531, 533 (Mo.App.1985), through which an ultimate conclusion is linked to remote facts only by resorting to speculative possibilities. *See e.g. State v. Falkner, supra; State v. Brown, supra.*

▮▮▮ We find no such attenuation in permitting an inference that one who attempts to forcibly break and enter a residence in the absence of its occupants is doing so with the intention of stealing. Appellant's argument confuses drawing several inferences from one fact with drawing inferences from inferences. That the structure appellant attempted to forcibly and unlawfully enter was a temporarily unoccupied residence permits a direct inference of intent to steal without any intervening need to resort to the equally permissible inference that the residence contained things of value.

Appellant also argues that the facts and circumstances from which intent to steal may be inferred are equally consistent with an inference of a nostaligic desire to revisit his childhood home. It was developed on cross-examination of the State's witnesses that the Smith residence had formerly been owned by appellant's family and he had lived there throughout his childhood until his family moved when he was about twelve. The jury could have accepted such an argument, but it chose not to do so. We are constrained on appellate review to accept as true all the facts and reasonable inferences tending to support the conviction and to disregard evidence and inferences to the contrary. *State v. Applewhite*, 771 S.W.2d 865, 866 (Mo.App.1989). As we have seen, the inference of appellant's intent to steal logically flows from his intent to forcibly enter a residence and we must accept the jury's rejection of other possible inferences.

Appellant's second point on appeal charges trial court error in passing to the jury an array of photographs including that of appellant. The array consisted of front and profile views of five young white males each of whom had a board across his chest. In the frontal view the board was blacked out. In two of the side views, including that of appellant, it was apparent that some lettering was on the board although it was not legible. The photographs were identified by Mrs. Gilmore as having been brought to her house by a detective a couple of days after she had reported the incident. At that time she identified appellant's photograph and, at the detective's request, wrote her initials and the date, June 3, 1987, on the back of his photograph.

Appellant strenuously objected to the admission of these photographs into evidence on the grounds that they were obviously police identification photographs, mug shots, which implied appellant was involved in other crimes. This objection was overruled. At the conclusion of the State's evidence appellant again objected to the prosecutor's request to pass the photo array to the jury. This objection focused upon the presence of a second set of initials, W.S.S., and a date on the back of appellant's picture which enhanced the prejudicial effect inherent in the display of mug shots to a jury. No person with those initials testified or was mentioned to the jury in this case. In voicing her objection out of the hearing of the jury, appellant's counsel stated W.S.S. was William Smith, a witness in one of the original counts of the indictment of which appellant was acquitted at the first trial. The objection was overruled and the photographs were passed to the jury.

■ As a general rule mug shots may be admitted into evidence and viewed by the jury when all identifying information is masked and when the defendant's identity is in issue and they will help the jury determine the accuracy of the identification. *State v. Luckett,* 770 S.W.2d 399, 403 (Mo.App.1989). However, where the mug shots or the testimony by which they are identified discloses a defendant's prior arrest or convictions, their admission constitutes prejudicial evidence of other crimes. *State v. Quinn,* 693 S.W.2d 198, 200 (Mo. App.1985). Tested by these general principles, we find no error in the reception into evidence of the photographic array. Appellant did not testify or admit that he was the person observed by the two neighbors so that identification was an issue in the case, albeit not the crucial issue. The evidence that Mrs. Gilmore selected a picture from a photographic display can be seen as corroboration of her in-court identification. Nothing in the testimony heard by the jury suggested that the photograph of appellant had been taken in connection with an arrest for any crime other than the one on trial. Standing alone, the mug shot on which all identifying information had been concealed is neutral; it is the testimony of witnesses or other evidence pertaining to the mug shot which presents the potential for tainting the record. *State v. Phillips,* 723 S.W.2d 524, 525 (Mo.App.1986). No such taint appears from Mrs. Gilmore's identification of the photographs.

■ However, by ordering the photographs to be passed to the jury, the trial court destroyed the neutrality with which they had been clothed. The jury had heard Mrs. Gilmore's account of how she was asked by the detective to record her selection of appellant's photograph by writing her initials and the date on the back thereof. Immediately below her initials appear the initials of the detective. Adjacent to these inscriptions appear another set of initials, W.S.S., and a date with the detective's initials below that. No one with the initials W.S.S. testified or was even mentioned in the case on trial. Observing this second set of initials and mindful of the procedure described by Mrs. Gilmore, a reasonable juror could only conclude that someone had identified appellant in connection with a police investigation of some other crime.

Moreover, under the circumstances of this case, the value of passing the photographs to the jury was minimal while the potential for prejudice was immense. Mrs.

Gilmore's identification of appellant, based upon seeing him twice plus a face to face conversation, corroborated by the second neighbor was not the crucial issue in the trial. Indeed, in closing argument appellant's trial counsel virtually conceded that appellant was trespassing at his childhood home and challenged the sufficiency of evidence to prove an intent to steal as required by the verdict directing instruction. The knowledge that appellant had been identified in connection with another crime can readily be seen as the factor which tipped the scales against appellant on the decisive issue of intent. The evidence that appellant intended to steal is not so strong that we can declare the error in passing the photographs to the jury harmless.

Having concluded this case must be remanded for a new trial, appellant's final point on appeal, which pertains to the denial of his Rule 29.15 motion, is moot.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

SMITH, P.J., concurs.

SATZ, J., concurs in result.