**STATE of Missouri, Respondent,**

v.

**Gerald GARRETT, Appellant.**

No. 58686.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 3, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 1, 1992.

Judith LaRose, Columbia, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Judge.

On May 20, 1989, a St. Louis County grand jury returned a five-count indictment charging defendant in Count I with first degree burglary, § 569.160,[1] in Count II with first degree robbery, § 569.020, and in Count III with armed criminal action, § 571.015. These three counts pertained to alleged offenses against William and Muriel Ziskind inside their home on April 14, 1989. In Count IV, defendant was charged with first degree robbery, § 569.020, and in Count V, with armed criminal action. These counts pertained to alleged offenses against Laura Fedder, outside of her apartment on April 7, 1989. Defendant's motion to sever offenses was sustained. On April 11, 1990, a jury found defendant guilty of

the lesser offense of second degree robbery in the April 7, 1989 offense against Laura Fedder but not guilty of armed criminal action. On May 31, 1990, another jury found defendant guilty of first degree burglary in the April 14, 1989 offenses against the Ziskinds but not guilty of robbery or armed criminal action. Pursuant to the juries' assessment of punishment, the court sentenced defendant to eight years on the robbery count and five years on the burglary count to be served consecutively. Defendant appeals. We affirm in part and reverse in part.

## I.

### THE FIRST TRIAL

### THE FEDDER ROBBERY

The parties agreed to try the Fedder case first. Prior to trial, defendant moved to exclude all evidence of the Ziskind burglary and the events of April 14. The court denied this motion apparently on the basis of the common scheme or plan exception to the rule against the admission of evidence of other crimes and because the evidence was necessary to connect defendant with the vehicle from which incriminating evidence was subsequently seized. Defendant then modified his motion by seeking to exclude only the testimony of Mr. & Mrs. Ziskind and two neighbors who observed defendant and his automobile on April 14. This motion was also overruled. Defendant maintained his objections to this testimony throughout the trial.

Mrs. Fedder testified that about 10:15 p.m. on April 7, 1989, at the door to her apartment building, she was suddenly knocked down and her purse was taken. Later that night, her husband found a crescent wrench at the scene.[2] She reviewed police photographs on two occasions but failed to recognize her assailant. On April 21, police officers showed her six photographs and told her one of them was of a man they had arrested. She selected two of the six as having "characteristics of the

---

1. All statutory references are to RSMo. 1986.

2. Defendant's motion for leave to file a photograph of the wrench is granted.

man." On April 29, she identified defendant in a line-up. Defendant was the only person in the line-up whose photograph had been previously shown to her. She was assured by police that the man she identified was the man they suspected.

Mrs. Ziskind was permitted to testify over defendant's objections, that on April 14, she was aroused from bed around 10:15 p.m. by loud noises. She went toward her living room and was confronted by a man holding a large screwdriver. In the well-lighted bedroom she "made a very big point" of remembering the man's features. Subsequently, she unequivocally identified defendant in a photographic array and in a line-up.

Jeffrey Clay, the Ziskind's next door neighbor, testified that on April 14, he observed a dark colored Chevette parked in front of his house with the motor running. As he went outside for a closer look, the car drove away. He did not see the driver but was able to describe the car to the police. Another neighbor, Jared Alfend, while walking his dog about 10:30 p.m. on April 14, observed an unoccupied dark colored Chevette automobile with its motor running. He then saw a black man walking past him toward the car. They exchanged greetings and, as he continued on, the car drove away. When the police came to the Ziskind home, Alfend gave them a description of the car and was later shown a Chevette which looked similar to the car he had seen. He was unable to identify the man he had seen from photographs or in a line-up.

About 8:30 p.m. on April 21, a police officer observed a red or rust colored Chevette. He stopped the car, which was being driven by defendant. Defendant voluntarily accompanied the officer to police headquarters and agreed to have his picture taken. This picture, along with five others, was shown to Mrs. Fedder. She paused over one photo and then selected that of defendant, but she said she did not remember a mustache and wanted to see

him in person before being sure. She was told the photo she selected was the man under arrest. Another police officer testified about showing the pictures to Mrs. Ziskind who, he said, identified defendant's photograph at first sight.

A tool box was found in the trunk of defendant's car. Paint chips on the 8–inch crescent wrench found near the Fedder apartment building appeared on visual examination to be similar to paint on the tool box, although no laboratory testing for comparison was made.

Rule 23.05 authorizes the joinder of two or more offenses of the same or similar character in a single indictment. The purpose of this rule is the achievement of judicial economy. Rule 24.07(b) provides for a separate trial of offenses joined in a single indictment upon a showing by written motion that substantial prejudice would result from a joint trial. The purpose of this rule is to protect the rights of an accused. In this case, the purpose of both rules was thwarted. Although Judge Kenneth Weinstock granted defendant's motion for severance of offenses, which alleged he would be prejudiced by the evidence of other crimes, Judge Melvyn Weisman permitted the introduction of evidence of the April 14 crime in the trial of the April 7 offense.

The State argues that the evidence of the Ziskind burglary was admissible under three of the well-known exceptions to the rule against the admission of uncharged[3] crimes: 1) to establish identity, 2) to show evidence of a common scheme or plan, and 3) to establish a complete and coherent picture of the investigation leading to the apprehension of defendant or the circumstances of the arrest. We disagree.

Whenever the question of the admissibility of evidence of a defendant's commission of an uncharged crime is at issue, a court is required to balance the prejudicial effect of such evidence against its probative value toward establishing guilt of the charged offense. *State v. Mal-*

---

**3.** Many cases have used "uncharged crimes" interchangeably with the terms "other crimes" and "unconvicted conduct" in describing and applying this rule. These terms are synonymous and mean other crimes which are not being tried in the present trial.

*lett,* 732 S.W.2d 527, 534 (Mo.banc), *cert. denied,* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). Such evidence constitutes an attack upon the character of a defendant and tempts the jury to find the defendant guilty of being a criminal rather than being guilty of the particular crime charged. Thus, the prejudice inherent in evidence of a defendant's commission of some other offense is readily apparent. However, this prejudicial effect may be overcome if the challenged evidence possesses a logical relevance toward proving a disputed issue in the case on trial. We examine the State's contentions in the light of this need to strike a balance between prejudice and probative value.

▪ In its argument, the State has tended to confuse and overlap the common scheme and plan exception with the similarity of conduct exception. The former relates to a series or sequence of criminal acts, each forming a link in the accomplishment of the intended ultimate objective. Thus, in *State v. Shaw,* 636 S.W.2d 667 (Mo.banc), *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982), a prison inmate was charged with the murder of a prison guard. There was evidence tending to show defendant killed the guard in order to obtain a weapon with which to kill a civilian employee of the prison. Testimony describing his subsequent assault upon the employee was properly admitted in his trial for the earlier murder of the guard as a part of a common scheme or plan. *Id.* at 672. No ultimate objective links the Ziskind burglary with the Fedder robbery.

▪ We also reject the State's argument that the two crimes possess sufficient similarities as to relevant toward the issue of identifying defendant as the perpetrator of both offenses. The similarities pointed to by the State are that both crimes occurred on Friday nights and that a tool was carried by the perpetrator of each. The similarity of conduct, or modus operandi, exception authorizes the State:

"[T]o prove other crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated murders, robberies, or rapes. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature."

McCormick on Evidence, § 190, pp. 559–60 (3rd Ed.1984). *See also, State v. Young,* 661 S.W.2d 637, 639 (Mo.App.1983).

The evidence that the robber of Mrs. Fedder had a wrench, a tool capable of use to inflict physical force in an assault, and that the Ziskind burglar had a screwdriver, a tool capable of use to pry open locked doors, can hardly be said to earmark the two crimes as the handiwork of the same individual.

▪ We recognize the legitimacy of the State's argument that it is entitled to develop a complete and coherent picture of the investigation leading to the apprehension of the defendant. *See, State v. Wilson,* 755 S.W.2d 707, 710 (Mo.App.1988). However, we are unable to accept the State's contention that this rule justifies the introduction of evidence pertaining to the Ziskind burglary because such evidence was necessary to explain how the police obtained photographs of defendant, which were tentatively identified by Mrs. Fedder, and to show how the crescent wrench was linked to defendant through paint chips matching the tool box discovered in defendant's car.

▪ Introduction into evidence of police photographs of a defendant is always conditioned upon the exclusion of any identifying information which might disclose the defendant's prior arrests or conviction of another crime. *State v. Quinn,* 693 S.W.2d 198, 200 (Mo.App.1985). In *State v. Blaney,* 801 S.W.2d 447, 450 (Mo.App. 1990), this court held that although a police photograph upon which all identifying information had been concealed was neutral in itself, the disclosure to the jury that the photograph was related to a different and unrelated crime constituted reversible error. Thus, disclosing to the jury that the photograph identified by Mrs. Fedder was a picture of the Ziskind burglar was errone-

ous. Furthermore, it was not necessary for the jury in the Fedder case to know that the defendant's automobile had been described to the police in connection with the investigation of another crime in order to show his connection with the tool box. This connection is established by the presence of the tool box in his automobile. As stated by our Supreme Court in *State v. Collins*, 669 S.W.2d 933, 936 (Mo.banc 1984), "evidence of other crimes, which is highly prejudicial, ... should be received only when there is strict necessity. Here, the prejudicial effect outweighs the necessity for and the probative value of the testimony." The police officer who stopped the defendant's automobile testified that he had been alerted at a roll call to be on the lookout for a vehicle matching the description of the defendant's automobile. It was not necessary to go beyond this by producing witnesses who reported seeing the automobile at a different time and in a different place and in connection with a different crime investigation. The testimony of Mrs. Ziskind identifying defendant as the man who broke into her home and aroused her from bed is utterly devoid of probative value toward proving defendant's guilt in the Fedder robbery. Her testimony clearly and unequivocally established the defendant's involvement in a particular crime other than that for which he was on trial. This testimony clearly distinguishes this case from decisions which have allowed the State to explain the "circumstances preceding the arrest" through evidence of outstanding arrest warrants without reference to any specific charge or offense. *See, State v. Sanders*, 761 S.W.2d 191 (Mo.App.1988); *State v. Hampton*, 648 S.W.2d 162 (Mo.App.1983); *State v. Jones*, 578 S.W.2d 286 (Mo.App. 1979). Rather, the facts of this case are more akin to *State v. Tillman*, 454 S.W.2d 923 (Mo.App.1970), in which the Supreme Court reversed a conviction for carrying a concealed weapon because the State attempted to explain the circumstances of the arrest by testimony that the defendant was wanted for murder and robbery. The testimony of Mrs. Ziskind identifying defendant as the intruder in her home could have no other purpose than to bolster the testimony of Mrs. Fedder who professed uncertainty at first in her identification of her assailant. The highly prejudicial nature of this testimony when balanced against the absence of probative value requires reversal of defendant's conviction of the Fedder robbery.

■ In his final point seeking reversal of the Fedder robbery, defendant charges trial court error in overruling his motion to suppress Mrs. Fedder's pre-trial and trial identification. He argues this evidence is tainted by suggestive procedures. We disagree.

The mere fact that Mrs. Fedder was told before viewing an array of six photographs that the police wanted to see if she could identify a suspect they had arrested does not amount to impermissibly suggestive procedure. *State v. Simms*, 810 S.W.2d 577, 582 (Mo.App.1991). There is no evidence that Mrs. Fedder's identification of defendant at the lineup was the product of any police suggestion. Defendant's contention that because the defendant was the only person in the lineup whose photograph was among the six photographs previously displayed to Mrs. Fedder may be an appropriate jury argument challenging the reliability of her identification. It is not, however, impermissibly suggestive. We find no error in the overruling of defendant's motion to suppress.

## II.

### THE SECOND TRIAL

#### THE ZISKIND BURGLARY

■ In challenging his conviction of the Ziskind burglary, defendant's sole point on appeal asserts trial court error in allowing the State to read to the jury portions of his testimony from the trial of the Fedder robbery. Defendant claims this violated his right against self-incrimination as protected by the United States and the Missouri Constitutions. Defendant acknowledges that he knowingly and voluntarily waived this privilege by testifying on his own behalf at the Fedder trial. Relying on *State*

*ex rel. Imboden v. Romines,* 760 S.W.2d 130, 134 (Mo.App.1988), he argues that this waiver is "limited to the particular proceeding in which the witness volunteers the testimony or the accused takes the stand." Defendant misreads the import of *Imboden* which stands solely for the principle that a witness who testifies in one proceeding may not be compelled to give further testimony in a different proceeding. *Imboden* does not address the issue of the use of the prior testimony as admissions in a subsequent proceeding. On that issue our Supreme Court has clearly stated "testimony voluntarily given by defendant in a former trial [of] himself or another may be received in evidence as an admission." *Rodden v. State,* 795 S.W.2d 393, 396 (Mo.banc 1990) *cert. denied,* — U.S. ——, 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991); *State v. Long,* 324 Mo. 205, 22 S.W.2d 809, 813 (1930). Such testimony is no different than a confession made by an accused after proper Miranda warnings. In either case, the introduction of his or her admissions at a later trial does not "compel him to testify" in violation of the Constitutional privilege against self-incrimination.

### CONCLUSION

For the reasons stated above, the defendant's conviction of robbery in the second degree in the trial of the Fedder case is reversed and remanded. The defendant's conviction of burglary in the first degree in the Ziskind case is affirmed.

SIMON and SATZ, JJ., concur.